**Harold R. CONN**

v.

**The UNITED STATES.**

**No. 157–63.**

United States Court of Claims
May 12, 1967.

Fred W. Shields, Alexandria, Va., attorney of record, for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

COWEN, Chief Judge.

Plaintiff, a former United States Marine seeking the recovery of active duty pay and allowances, alleges the illegality of (1) an administrative reduction-in-grade, and (2) an undesirable discharge effective November 2, 1961. The parties have entered into a stipulation of facts and all that remains is the resolution of legal issues.

On or about September 14, 1961, while assigned as a member of the Security Guard at the American Embassy, Port au Prince, Haiti, plaintiff was involved in an automobile accident which allegedly resulted in the death of a pedestrian. He was held in the custody of the Haitian Police for a short time and was then released to the Marine Corps authorities who, on September 17, 1961, flew the plaintiff back to his headquarters at Henderson Hall, Virginia.

On the day after plaintiff's departure from Port au Prince, Major Paul Weiler of the Marine Corps was sent to Haiti to conduct an investigation of the alleged accident. Plaintiff was not designated a party to the investigation and was not represented during any part of it.

On October 4, 1961, plaintiff was notified by his Commanding Officer that he was to be given nonjudicial punishment under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, as amended (1964 ed.). Specified as offenses were:

Viol of UCMJ, Article III—Operate a motor vehicle while drunk in a reckless and wanton manner causing said vehicle to strike and injure a pedestrian. Viol of UCMJ, Art. 134—Leave the scene of an accident without rendering assistance. Viol of UCMJ, Art. 119—Involuntary Manslaughter while operating a motor vehicle in a reckless manner and cause said vehicle to strike and kill Eximus SAINTE, a female pedestrian.

On the same day, the Commanding Officer awarded nonjudicial punishment by reducing plaintiff's grade from Sergent (E–4) to Lance Corporal (E–3). The only evidence of the alleged offenses was the *ex parte* report of the Investigating Officer, Major Weiler. Plaintiff was

not furnished a copy of this report prior to the imposition of the punishment.[1]

One day later, on October 5, 1961, plaintiff was informed by his Commanding Officer that he had been recommended for an administrative discharge for misconduct. Having requested that a board of not less than three officers conduct a hearing, plaintiff appeared before an Undesirable Discharge Board on October 16, 1961. At this time, he was represented by his present counsel. Although a reporter was present at the hearing, no verbatim record of the proceedings was made and the only record consists of a second endorsement to the Commanding Officer's recommendation that plaintiff be undesirably discharged. In this endorsement, it was recited (1) that the said Board met at 0915; (2) that counsel for plaintiff was introduced; (3) that the plaintiff was advised of his rights under Article 31 of the Uniform Code of Military Justice; (4) that plaintiff's service record and basic letter of the Commanding Officer with first endorsement thereto were made available to plaintiff's counsel; (5) that counsel made a statement on behalf of the plaintiff, and (6) that after a complete review of the subject case it was the unanimous opinion of the Board that the plaintiff be given an undesirable discharge by reason of misconduct.

The Board's recommendation that plaintiff be given an undesirable discharge was approved by the Commanding Officer, Headquarters Battalion, on October 19, 1961. Six days later, the Commandant of the Marine Corps directed that plaintiff be discharged by reason of unfitness for retention in the service and plaintiff accordingly received an undesirable discharge on November 2, 1961.

### The Article 15, Nonjudicial Punishment

"Article 15 [of the Uniform Code of Military Justice] * * * provides a means whereby military commanders may impose nonjudicial punishment for minor infractions of discipline." Its utilization permits the services "to reduce substantially the number of court-martials for minor offenses, which result in stigmatizing and impairing the efficiency and morale of the person concerned." S.Rep.No. 1911, 87th Cong., 2d Sess., U.S.Code Cong. & Ad.News, pp. 2379, 2380–82 (1962).

■ A prompt and efficient vehicle for dealing with minor disciplinary problems, Article 15 nevertheless culminates in punishment and, for this reason, it is to be administered in strict accordance with promulgated regulations. Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957).

Prior to the imposition of plaintiff's nonjudicial punishment, an *ex parte* investigation of the alleged accident was conducted by Major Weiler in Haiti. Since the plaintiff was neither represented at this investigation nor accorded the rights of a party, two Navy regulations assume particular relevance.

Among the provisions of the Navy Manual of the Judge Advocate General is this directive: "[I]f the individual concerned was not accorded the rights of a party with respect to the offense for which punishment is contemplated, he shall be afforded the impartial hearing prescribed by paragraph 133b, MCM 1951." Naval Supplement to the Manual for Courts-Martial, 1951, § 0101d(1), 32 C.F.R. § 719.101(d) (1) (1962). Under subparagraph (2) of the same section, an impartial hearing is to include the following "elemental requirements:"

(a) Presence of the individual concerned before the officer conducting the hearing;

(b) Advice to the individual concerned of the offense or offenses of which he is suspected;

(c) Explanation to the individual concerned of his rights under article 31(b) of the Code;

1. An appeal from the nonjudicial punishment, made on October 20, 1961, was denied by the Commandant of the Marine Corps, as was a subsequent request for reconsideration.

(d) Receipt of the oral statements of witnesses against the individual concerned in his presence or providing the individual concerned with copies of written statements of witnesses against him;

(e) Availability to the individual concerned of all items of information in the nature of physical or documentary evidence for his inspection;

(f) Full opportunity to the individual concerned to present any matters in defense, mitigation or extenuation of the suspected offense or offenses.

The proceeding before plaintiff's Commanding Officer failed to meet the stated requisites of an impartial hearing in at least two respects. The only evidence relied upon for the imposition of the punishment was the *ex parte* investigation report of Major Weiler, a copy of which was never furnished to the plaintiff prior to his reduction-in-grade. In other words, the Commanding Officer failed to make available for plaintiff's inspection "all items of information in the nature of physical or documentary evidence." Nor was the plaintiff provided with "copies of written statements of witnesses against him," which had been procured by Major Weiler during his investigation and forwarded as a part of his report. The absence of these two procedural protections also creates doubt concerning the observance of the requirement that the plaintiff be afforded *"full opportunity * * * to present any matters in defense, mitigation or extenuation of the suspected offense or offenses."* [Emphasis supplied.]

■ In view of the noncompliance with controlling regulations, we hold that plaintiff's reduction-in-grade from Sergeant (E–4) to Lance Corporal (E–3) was an invalid imposition of nonjudicial punishment.

### The Undesirable Discharge

To the public generally, a less-than-honorable discharge carries the damaging implication that an individual has been declared unfit for retention in the Armed Forces of the United States. Often, the difference between an undesirable discharge and a dishonorable discharge is one which is either misunderstood or has no connotation whatever. To a potential employer, the distinction may betoken no more than semantic subtlety. To the individual himself, both forms of discharge constitute a blemish which will forever attach to his record of performance.

■ All of this demands that judicial review focus with scrupulous care upon severance from the armed services with a less-than-honorable administrative discharge. Applicable regulations, and therefore the fundamentals comprising due process, must be honored both in letter and spirit. Cole v. United States, 171 Ct.Cl. 178 (1965); Middleton v. United States, 170 Ct.Cl. 36 (1965); Smith v. United States, 155 Ct.Cl. 682 (1961).

In Chapter 3, § 0301(a) (b), of the Manual of the Judge Advocate General of the Navy, 32 C.F.R. § 719.154(a) (b) (1962), these definitions appear:

(a) *Party.*—A party is a person subject to the Uniform Code of Military Justice * * * whose conduct or performance of duty is subject to inquiry". * * *

(b) *Subject to inquiry.*—A person's conduct or performance of duty is "subject to inquiry" when the person is involved in the incident or event under investigation in such a way that disciplinary action may follow; or which may affect his rights or privileges; or jeopardize his personal reputation or professional standing.

Section 0302(a) (1) of the Manual, 32 C.F.R. § 719.155(a) (1) (1962), requires that:

Any member of the naval service subject to the Uniform Code of Military Justice whose conduct or performance of duty is subject to inquiry *shall be designated* as a party. [Emphasis supplied.]

Section 0304(a) of the Manual, 32 C.F.R. 719.157(a) (1962), provides:

> *General.*—A party to an investigation by a fact-finding body. shall have the following rights:
>
> (1) To be given due notice of such designation.
>
> (2) To be present during the proceedings, but not when the investigation is cleared for deliberations.
>
> (3) To be represented by counsel.
>
> (4) To cross-examine witnesses.
>
> (5) To introduce evidence.
>
> (6) To testify as a witness.
>
> (7) To refuse to incriminate himself, and to refuse to make any statement regarding any offense of which he is accused or suspected.
>
> (8) To make a voluntary statement, oral or written, to be included in the record of proceedings or investigative report.
>
> (9) To make an argument at the conclusion of presentation of evidence.

And in § 0304(d) of the Manual, 32 C.F.R. § 719.157(d) (1962), there is this admonition:

> (d) *Failure to accord rights.* Failure to accord the rights of a party to a person whose conduct becomes subject to inquiry may preclude use of the record of proceedings as evidence. (Article 50 of the Code.) * * *

After plaintiff's hurried departure from Haiti, he became a person whose conduct was subject to inquiry by the fact-finding investigation of Major Weiler.[2] Therefore, § 0302(a) (1) of the Manual of the Judge Advocate General of the Navy, supra, required that he be designated as a party to the inquiry. Had this been done, plaintiff would then have become entitled to the rights enumerated in § 0304(a) of the Manual, supra. Plaintiff, however, was not designated a party, was in no way represented during the *ex parte* investigation, and was not accorded the rights guaranteed by the Marine Corps' own regulations.

The effect of this deviation from the regulations is evident: the fact-finding process was unilateral and devoid of the safeguards intended to accompany plaintiff's participation in the proceedings. In its reply brief, the defendant candidly admits that plaintiff's rights were thus disregarded:

> That plaintiff had a right to be present at the investigation was fully recognized and the reason for not according plaintiff such rights is explained by Major Weiler in his report as follows (Joint Ex. 3, Encl. 4):
>
> Sergeant CONN was not available to the investigating officer since he had departed Haiti on 17 September with orders to report without delay to the Commanding Officer, Headquarters Battalion, Headquarters, U. S. Marine Corps. This naturally resulted in the fact that he, as an interested party to the investigation, was not afforded the right to be present during the questioning of witnesses or the examination of other evidence.

Under the circumstances of this case, plaintiff was obviously promptly removed from Haiti and would not be returned to Haiti in the interests of his own safety. The investigation could not be continued in the United States because some of the witnesses were Haitian nationals and could not be compelled to come to the United States to testify.

■■ Investigative findings of facts which precede the imposition of an undesirable discharge must find their legal and equitable justification in adherence to established procedures. Defendant's attempt to justify its deviation from the regulations under the cloak of expediency misses this mark, for compliance with the regulations was mandatory.

---

2. Major Weiler's fact-finding assignment was of a type designated as a "one-officer investigation" defined in § 0204(d) of the Manual of the Judge Advocate General of the Navy, 32 C.F.R. § 719.151(d) (1962).

The defendant makes one further contention: Section 0304(d) of the Manual of the Judge Advocate General of the Navy [3] and Article 50 of the Uniform Code of Military Justice,[4] when read together, are said to prohibit the use of *ex parte* testimony only in a court-martial or military commission proceeding and not in an administrative nonjudicial proceeding. The defendant errs in not reading far enough. Paragraph (c) of Article 50 refers specifically to the admissibility of such evidence "before a court of inquiry *or a military board*." [Emphasis supplied.] And the Undesirable Discharge Board which heard plaintiff's case falls squarely within the meaning of a "military board."

The only evidence supporting the Board's recommendation that plaintiff be undesirably discharged was the *ex parte* investigation report of Major Weiler and the attached unsworn statements of witnesses whose testimony had been taken in Haiti. But plaintiff never participated in the investigation and was never accorded the rights of a party. Therefore his undesirable discharge based solely on such evidence was legally invalid.

For the reasons stated above, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. Plaintiff is entitled to recover (1) the difference between the pay and allowances of a Sergeant (E-4) and a Lance Corporal (E-3) for the period from October 4, 1961 to November 2, 1961; and (2) the active duty pay and allowances of a Sergeant (E-4) from November 2, 1961 to August 14, 1966, the date on which his term of enlistment would normally have expired. The exact amount of recovery is reserved for further proceedings under Rule 47(c) (2), including a determination of the amount of plaintiff's civilian earnings since his illegal discharge. Middleton v. United States, 175 Ct.Cl. 786 (1966).

3. Section 0304(d) of the Manual of the Judge Advocate General of the Navy, 32 C.F.R. § 719.157(d), provides:
   "*Failure to accord rights.* Failure to accord the rights of a party to a person whose conduct becomes subject to inquiry may preclude use of the record of proceedings as evidence (Article 50 of the Code.) * * *"

4. Article 50 of the Uniform Code of Military Justice, 10 U.S.C. § 850 (1964 ed.) provides:
   "(a) In any case not capital and not extending to the dismissal of a commissioned officer, the sworn testimony, contained in the duly authenticated record of proceedings of a court of inquiry, of a person whose oral testimony cannot be obtained, may, if otherwise admissible under the rules of evidence, be read in evidence by any party before a court-martial or military commission if the accused was a party before the court of inquiry. * * *
   *   *   *   *   *   *
   "(c) Such testimony may also be read in evidence before a court of inquiry or a military board."