Gilbert M. CASON

v.

The UNITED STATES.

No. 161–70.

United States Court of Claims.

Jan. 18, 1973.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR REHEARING

NICHOLS, Judge:

This case comes before the court on plaintiff's motion for reconsideration. A decision was rendered in this case on June 16, 1972, 461 F.2d 784. It was thereafter discovered that due to no fault of the plaintiff, plaintiff's response to defendant's supplemental memorandum on the question of laches was never distributed to the judges of this court. Because of the possible unfairness to plaintiff's position the court agreed to consider plaintiff's supplemental memorandum and to rehear the case.

Plaintiff, a former enlisted man in the Navy, a diver, was involuntarily separated from the service for unfitness with a General Discharge Under Honorable Conditions on May 20, 1964, during his fourth term of enlistment which would have expired on July 27, 1967. The grounds for dismissal were that he had allegedly made homosexual overtures to a fellow serviceman and that he had admitted to engaging in prior homosexual behavior. Plaintiff urges that his dismissal on these grounds was improper and the procedure under which he was separated was defective.

At the time of his dismissal, plaintiff had served in excess of 15½ years and had he been permitted to complete his enlistment he would have served 18 years and 5 months. Plaintiff's briefs point out that his separation precluded his re-enlistment and subsequent qualification for transfer to the Fleet Reserve.

Penrose Lucas Albright, Arlington, Va., attorney of record for plaintiff; Mason, Mason & Albright, Arlington, Va., of counsel.

The investigation which culminated in plaintiff's separation grew out of an incident aboard a training vessel based in Washington, D.C. J. R. Soehner, a sea-

man just recently attached to the ship, complained of homosexual advances made to him by plaintiff. The investigation revealed that plaintiff had indeed made remarks which might be construed as propositional, or possibly shipboard bantering of no real consequence. Apparently, Soehner took these "advances" as real. He complained to a superior and when told to forget it, he enlisted the aid of Collins, a fellow serviceman. Together, they planted a microphone in plaintiff's quarters and recorded on tape a conversation between plaintiff and Soehner. This tape was turned over to investigative authorities.

When confronted, plaintiff denied all, claiming that his remarks were merely facetious, intended to bait Soehner, whom plaintiff suspected of being a homosexual. Upon interrogation, plaintiff admitted to a few isolated homosexual encounters, dating prior to the present enlistment. These admissions he subsequently repudiated. Plaintiff was later interviewed and given a psychiatric evaluation by Lt. Cdr. Jones, who reported:

* * * It is the impression of this examiner that there is no real evidence on the basis of this interview to indicate sexual deviancy. But in view of the signed statement dated 16 December 1963 he would be classified as a Class II, Homosexual and discharged in accordance with SECNAVINST 1620.1.

SECNAVINST 1620.1 provided in pertinent part:

* * * * * *

b. (1) *Class II* is defined as those cases wherein personnel, while in the naval service, have engaged in one or more homosexual acts or where evidence supports proposal or attempt to perform an act of homosexuality, and which do not fall in the category of class I above.

(2) *Disposition.* Disposition will be accomplished by administrative separation under conditions other than honorable, unless the individual resists separation from the service under such conditions, in which case he will be recommended for trial by court-martial. * * *

* * * * * *

* * * In the case of one who, while in the service, has allegedly made an indecent proposal or has attempted to commit a homosexual act, expert medical opinion that he is not a "true homosexual" is of bearing where the words or actions constituting the alleged proposal or attempt are admitted, but the actor contends that he spoke or acted facetiously, with no real intent to engage in the homosexual act. Such an issue will normally be best left to resolution by a general court-martial. * * *

By letter dated February 19, 1964, plaintiff's counsel at the time, Jack S. May, Esq., referred to plaintiff's emphatic denial of any homosexual activity and stated:

* * * In the event you do not deem it appropriate to grant his request for trial, he desires to avail himself of any and all administrative remedies that may be open to him in this matter. However, you are respectfully requested to regard this as a demand for trial by Courts-Martial or dismissal of the charges, *for the purposes of pursuing his rights in Courts of competent jurisdiction in the event administrative proceedings should lead to his separation from the Service.* (Emphasis supplied.)

By reply letter dated March 4, 1964, Capt. H. F. Rommel, commanding officer of the base, denied plaintiff's demand for a court-martial as "not considered appropriate."

The commanding officer convened a Field Board of Officers to conduct a hearing. Such hearing is governed by 32 C.F.R. § 730.15 (1962), which provides in pertinent part:

* * * the recorder arranges for the attendance at the hearing of the respondent, all witnesses for the government, and military witnesses for the respondent. * * *

\* \* \* \* \* \* \*

\* \* \* Attendance at the hearing of military personnel on active duty who are in the local area will be arranged for by the recorder. Testimony of active duty military personnel not in the immediate area, if needed, should be obtained and presented in the form of written statements.

\* \* \* \* \* \*

(iii) The respondent has the right to present evidence, to examine all witnesses, and to hear all evidence against him. \* \* \*

At the hearing, the Government called no witnesses, presenting instead sworn statements of Soehner, Collins and others, along with an unsigned, unauthenticated transcript of the previously mentioned tape recording. Plaintiff objected to this procedure, noting that it denied him the opportunity of cross-examining the affiants and testing their testimony. Plaintiff vigorously objected to the tape transcript, arguing that not only was it hearsay but also that it was inaccurate, including, he alleged, some things that were not said and not including certain parts of the conversation. His objection with regard to the "witnesses" was based on the fact that at least Soehner, Collins and an Office of Naval Intelligence agent who had interrogated plaintiff and participated in the preparation of the evidence against him were military personnel on active duty in the local area. It was plaintiff's position at the hearing that the regulations governing the hearing, *supra,* at least impliedly required the Government to produce these "witnesses" to permit plaintiff to test their statements under familiar due process requirements. The Field Board noted the objections but did not attempt to comply with plaintiff's requests. On the Field Board's findings and recommendation, plaintiff was separated from the Navy effective May 20, 1964. Plaintiff sought review before the Navy Discharge Review Board which, on April 25, 1965, upheld the discharge. On recommendation of the Judge Advocate General and the Secretary of the Navy, the case was returned to the Discharge Review Board to ascertain whether the Board had followed the command of Harmon v. Brucker, 355 U. S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) that homosexual acts committed while petitioner was not in the service may not be considered. The Board was further directed not to consider Government Exhibit No. 7, Collins' statement, apparently on the grounds that he had been in the area at the time of the hearing and should have been present in person. On reconsideration, the Discharge Review Board, in a report dated April 12, 1966, found that the character of the discharge was proper and that no change or modification should be made, specifically noting that it excluded from consideration the testimony and exhibits precluded by the Judge Advocate General and the Secretary of the Navy. Plaintiff filed suit in this Court on May 19, 1970.

Plaintiff contends that he has been denied due process of law. He says the defendant failed to comply with its own regulations in that the only evidence presented by the Navy consisted of uncorroborated written statements of his accusers who were not made available for cross-examination despite their presence in the local area. He also complains of the commanding officer's failure to grant plaintiff a trial by court-martial when existing instructions state that a case such as plaintiff's "will normally be best left to resolution by a general court-martial."

The Government argues that the commanding officer's decision with regard to trial by court-martial was within his discretionary power since the regulations relied upon by plaintiff do not affirmatively require a trial by court-martial and that he did not abuse such discretion. The Government urges further that the separation was procedurally sufficient since the Discharge Review Board expressly excluded the complained-of ex parte statements, and testimony regarding conduct outside the current enlistment, during its reconsideration of the discharge. Defendant also raises the defense of laches, complaining

that plaintiff waited until the last day of our six-year statute of limitations period before bringing this suit.

In the initial decision in this case we held that plaintiff's cause of action was barred by laches. In so holding the court relied on cases: Plunkett v. United States, 58 Ct.Cl. 359 (1923), and Chamberlain v. United States, 66 Ct.Cl. 317 (1928), cert. denied, 279 U.S. 845, 49 S.Ct. 342, 73 L.Ed. 99 (1929), whose relevance was to demonstrate laches had been applied to military pay cases. On reconsideration we do not think that the doctrine should apply here because of those cases. Old decisions by this court often are difficult to find. One of the above precedents defendant cited, the other the court itself found. Both are more clear-cut as to delay without excuse, and prejudice to defendant, than the case at bar. If plaintiff's attorney had been aware of these cases, he might not have seen in them any threat to his own case.

In his response to defendant's supplemental memorandum and at oral argument plaintiff's attorney raised, as his reasons for the delay in filing this action: first, his efforts to obtain administrative relief, and second, his good faith belief that the question presented would be disposed of in the decision of another case then before this court. As it turned out that was not to be.

■ To invoke laches, the defendant must show that it has been prejudiced by plaintiff's inaction, though the longer the delay the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice. Grisham v. United States, 392 F.2d 980, 183 Ct. Cl. 657, cert. denied, 393 U.S. 843, 89 S. Ct. 125, 21 L.Ed.2d 114 (1968). We suggested certain areas of possible prejudice in our initial opinion in this case, but the defendant has made no attempt to substantiate that it was in fact in any specific manner prejudiced by plaintiff's delay.

Unhappily, payment for work not done is a prejudice factor that is common to every back pay award though it has to be swallowed in many. Here it is at a minimum due to plaintiff's gainful employment during much of the back pay period, and the comparatively short time running before the enlistment expired. Cf. Chappelle v. United States, 168 Ct. Cl. 362 (1964).

■ Added to this, we consider decisive the unfairness to plaintiff of dismissal on the ground of laches in reliance on precedents which are obscure and more than 40 years old. However parties before this court in the future will take this case as notice that military pay cases are not *per se* exempt from application of the doctrine of laches. Yet, in view of the frequency of military pay cases in this court, counsel might well have inferred, as he says he did, that the doctrine had no vitality except as to the claims of civilians. It is not doing equity to revive an apparently dead rule, and to give it retroactive effect. Cf. Gresham v. United States, Ct. Cl., 470 F.2d 542 (decided December 12, 1972); Container Transport Int'l Inc. v. United States, Ct.Cl., 468 F.2d 926 (decided November 10, 1972).

In enforcing the doctrine in military cases, certain differences between them and civilian cases must be taken account of. One that is relevant here, and urged by plaintiff, is that the civilian's administrative relief is mandatory, and cannot be bypassed. An employee therefore may consume years before the Civil Service Commission, but the time thus lost does not start either limitations or laches running. Friedman v. United States, 310 F.2d 381, 159 Ct.Cl. 1 (1962), cert. denied, 373 U.S. 932, 83 S. Ct. 1540, 10 L.Ed.2d 691 (1963); Keeney v. United States, 150 Ct.Cl. 53 (1960). On the other hand, a military person has available after his discharge, only administrative remedies that are permissive and do not toll limitations. Mathis v. United States, 391 F.2d 938 183 Ct.Cl. 145 (1968); Kirk v. United States, 164 Ct.Cl. 738 (1964). If, as our original opinion intimated, they do not suspend laches either, resort to them is discouraged, perhaps penalized. Yet

they were created with the object of providing remedies less costly to both sides, and more expeditious than litigation is. The military should have a fair chance to correct their mistakes themselves. We think that in military cases it would be improper and erroneous for us to apply laches in a way that would spur the commencement of suit as soon as discharges become final, before the results of seeking administrative relief are known. There no doubt are other differences prescribing differences in the application of laches, as between civilian and military cases. Knowledgeable counsel in future cases will apprise us of them.

■ At the same time we will observe that four years elapsed in this case between the failure of plaintiff's efforts for administrative relief, and the bringing of suit. This is entirely too long. With a minimal showing of injury, it would have mandated application of laches except for the desuetude factor.

Turning to the merits of the case at hand, we agree with the plaintiff's first contention insofar as we hold that defendant did not effect the discharge in accord with its own regulations. We do not pass on the others. The Supreme Court in the case of Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), set down the rule that "regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature.", at p. 372, 77 S.Ct. at p. 1157. The Supreme Court applied this rule in the case of Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959). That case involved the administrative dismissal of a civilian employee of the Department of Interior for reasons of national security. In holding that the dismissal was "illegal and of no effect" the Court stated, p. 540, 79 S.Ct. p. 973:

Preliminarily, it should be said that departures from departmental regula-

tions in matters of this kind involve more than mere consideration of procedural irregularities. For in proceedings of this nature, in which the ordinary rules of evidence do not apply, in which matters involving the disclosure of confidential information are withheld, and where it must be recognized that counsel is under practical constraints in the making of objections and in the tactical handling of his case which would not obtain in a cause being tried in a court of law before trained judges, scrupulous observance of departmental procedural safeguards is clearly of particular importance. * * *

This court has often applied the above stated rule to administrative dismissals of both military and civilian personnel. See: Fletcher v. United States, 392 F.2d 266, 183 Ct.Cl. 1 (1968). Conn v. United States, 376 F.2d 878, 180 Ct.Cl. 120, (1967); Cole v. United States, 171 Ct. Cl. 178 (1965); Middleton v. United States, 170 Ct.Cl. 36 (1965); Smith v. United States, 155 Ct.Cl. 682 (1961).

In the case of Conn v. United States, *supra* the plaintiff was a former Marine who was seeking recovery of active duty pay lost as the result of the actions of an Undesirable Discharge Board. Chief Judge Cowen writing for the court noted the stigma attached to a less-than-honorable discharge from the military and the importance of strict concurrence with department regulations. He stated at p. 127, 376 F.2d 881:

To the public generally, a less-than-honorable discharge carries the damaging implication that an individual has been declared unfit for retention in the Armed Forces of the United States. Often, the difference between an undesirable discharge and a dishonorable discharge is one which is either misunderstood or has no connotation whatever. To a potential employer, the distinction may betoken no more than semantic subtlety. To the individual himself, both forms of discharge constitute a blemish which will forever attach to his record of performance.

All of this demands that judicial review focus with scrupulous care upon severance from the armed services with a less-than-honorable administrative discharge. Applicable regulations, and therefore the fundamentals comprising due process, must be honored both in letter and spirit. (Cites omitted).

In the *Middleton* case, *supra*, this court held, 170 Ct.Cl. p. 40, that a "discharge in violation of regulations is a nullity". In that case the plaintiff, a former Navy enlisted man, was misled into agreeing to accept an undesirable discharge in order to avoid a court-martial, though under the regulations involved a court-martial would not have in fact been an appropriate course of action for the Navy.

A case very much in point with the case before us is Glidden v. United States, 185 Ct.Cl. 515 (1968). In that case, as in the case at bar, a question arose as to the availability of witnesses and the use of hearsay evidence. Glidden was before an Air Force Board charged with being a class II homosexual. Over plaintiff's objections the Board admitted into evidence a "certificate" or summary of a report by a civilian police officer concerning alleged acts of homosexuality by the plaintiff. Though the Board did not have authority to compel the appearance of the civilian police officer the court noted that no showing was made of an effort to have him appear and afford plaintiff the opportunity to cross-examine him. Such an effort was implicitly required by the regulations which allowed hearsay when necessary but called for the use of the best evidence available. The defense in *Glidden* attempted to show that any procedural errors were harmless in light of the admission by Glidden of the performance of the illicit acts. In finding that the Board proceedings were a nullity the court stated, p. 528:

 * * * The defendant is asking us to allow its motion because we can see that plaintiff really did commit the act. It wants us to bypass the rules we have held are binding on the administrative tribunals. Plaintiff is presumed innocent until his guilt is proved according to the prescribed forms and procedures.

In the case at bar, Cason came before the Field Board of Officers in 1964. The hearings were governed by the regulations set forth in 32 C.F.R. § 730.15 (1962). These Regulations provide in § (iii) "The respondent has the right to present evidence, to examine all witnesses, and to hear all evidence against him * * *." In § (b) it is provided that "Attendance at the hearing of military personnel on active duty who are in the local area will be arranged for by the recorder.", allowing written statements by those on active duty away from the immediate area. It is unrefuted that plaintiff's accusers were on active duty in the local area. Yet, though their presence was requested by plaintiff, there is no showing that any effort was made by the defendant to have them appear.

The case for the plaintiff is in this respect stronger than the situation in the *Glidden* case, *supra*. Here there is no possible excuse of the Board being powerless to produce the requested witnesses.

Insofar as the Board relied on the unattested transcription of the allegedly damaging tape it relied on very tenuous hearsay evidence. The plaintiff contended at the hearing that the transcript was inaccurate, objected to its admission into evidence; and demanded that the complete tape be produced. There is no showing that the Board made the slightest effort to consider plaintiff's requests. In so doing the Field Board ignored the intent of the Regulations to ensure a fair hearing and the specific prescription of § 730.15(d) "Board proceedings * * * should be formalized to the extent of assuring full opportunity for presentation of respondent's case." This includes the opportunity of an accused to test the authenticity of incriminating evidence.

The defendant contends that any irregularities at the Field Board were cured by the Discharge Review Board.

We do not agree. We think it significant that the Judge Advocate General recognized the departure by the Field Board from the Navy Regulations and instructed the Review Board not to consider certain evidence, as stated above. However, it must be noted that the Review Board had authority only to change, modify, or correct the original discharge, and was not an appellate tribunal to correct errors by the Board below, except in that area. It could not overturn the Field Board decision and reinstate the plaintiff. (See Serviceman's Readjustment Act of 1944 § 301, 58 Stat. 286.) Further it is clear from the decision of the Review Board that they relied heavily upon the evidence contained in the transcript of the tape to reach the conclusion that the decision of the Field Board was proper. As noted above this tape transcript was defective evidence even by the less stringent hearsay standards associated with administrative·boards.

 The record in this case indicates a clear disregard on the part of the Field Board for the procedural rights of the plaintiff as set forth in the above cited regulations. In light of the holdings in such situations by the Supreme Court and by this court the discharge of the plaintiff is deemed a nullity. The plaintiff is entitled to back pay for the period from his discharge to the end of his enlistment. O'Callahan v. United States, 451 F.2d 1390, 196 Ct.Cl. 556 (1971); Middleton v. United States, 170 Ct.Cl. 36 (1965). In so holding we make no determination as to plaintiff's being able to re-enlist thereafter and being transferred to Fleet Reserve. We anticipate that plaintiff will raise this question in proceedings before the Board for the Correction of Naval Records, as counsel stated he meant to do, and that the Board will consider on the merits whether plaintiff would have been allowed to re-enlist. The Board has power to correct a record to show a re-enlistment, if doing so would correct an injustice. We do not mandate a hearing under P.L. 92–415, 86 Stat. 652. Plaintiff did not ask for an order of remand. General Order No. 3 prescribing procedure under that statute, was issued December 12, 1972, after the second oral argument herein. See also Skaradowski v. United States, Ct.Cl., 471 F.2d 627, decided today.

Accordingly, the previous judgment of the court in this case is vacated. Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is allowed, and judgment is entered for plaintiff. The amount of plaintiff's recovery will be determined in further proceedings under Rule 131(c)(2).

BENNETT, Judge (concurring in the result and dissenting in part):

I concur in the result the court has reached wherein it has, on reconsideration, reversed its holding in the same matter reported at 461 F.2d 784, 198 Ct. Cl. 650 (1972). I am troubled, however, by what appears to be a holding that where laches is invoked as a defense it must always be proved, never presumed, although the longer the delay the less need there is to search for specific prejudice and the greater the shift to plaintiff of the task of demonstrating lack of prejudice. These cases must be considered individually on their facts but I would think there could be a situation where plaintiff delayed his suit for many years and where prejudice could reasonably be presumed. I wish to reserve my right to question such cases. In the ordinary situation, the court is correct in that at least some showing of prejudice by defendant should be made in order for it to prevail under this doctrine.

The court's opinion also appears to reject precedents deemed obscure by reason of age on the ground that they are difficult to find even though reported in the court's official reports. That is a little too sweeping for me. Old cases, like old wine, need not be rejected for age. Sometimes they are the best. Although the finding of either may require diligent search, the reward may be great.

SKELTON, Judge (dissenting):

I respectfully dissent because in my opinion the plaintiff's case is clearly barred by laches. Plunkett v. United States, 58 Ct.Cl. 359 (1923) and Chamberlain v. United States, 66 Ct.Cl. 317 (1928), cert. denied, 279 U.S. 845, 49 S. Ct. 342, 73 L.Ed. 99 (1929).