John Wayne MARINER

v.

The UNITED STATES.

No. 703–81C.

United States Claims Court.

Feb. 28, 1983.

John Wayne Mariner, pro se.

A. David Lafer, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

GIBSON, Judge:

This *pro se* plaintiff claims disability retirement pay under 10 U.S.C. § 1201 (1976) on account of the arthritic condition existing in his left leg at the time of his voluntary discharge as an enlisted man from the Regular Army on December 9, 1975. He also claims that he was improperly disciplined and demoted prior to discharge and that his retirement should have been at an E–7 rather than an E–5 rank. Because plaintiff waited almost six years from the time of his discharge before filing his petition on December 7, 1981, in our predecessor court, and in view of other circumstances delineated below justifying the application of the equitable doctrine of laches, plaintiff's motion for summary judgment is denied and defendant's cross-motion on all military and disability retirement pay claims is granted. Defendant's motion for summary judgment on its counterclaim arising out of an alleged debt of plaintiff to the Government is also denied.

### Facts

Plaintiff was inducted into the Army in April 1962 and served continuously in an enlisted status, with one interval from May 1965 to April 1966, until December 9, 1975, when he was honorably discharged. Prior to entering military service, plaintiff suffered multiple injuries in an automobile accident on October 2, 1960, including fractures to his left leg and ankle. His military medical record indicates a long history of problems stemming from those fractures. Notably, in 1971, traumatic osteoarthritis was diagnosed in plaintiff's left knee and ankle and he was required to use a leg brace for approximately two years prior to his discharge.

In his last two years in the Army, plaintiff apparently became increasingly concerned with the condition of his left leg since his medical records indicate that the leg was treated and/or evaluated on at least six different occasions during 1974. On one of these occasions in February 1974, it was recommended that plaintiff be given a permanent L3 profile [1]; that his marching and running be restricted; and that he use a short leg brace. However, throughout 1974 plaintiff was never found unfit for duty, and it was the opinion as of September 17, 1974, of at least one attending physician that it would be inappropriate to convene a Physical Evaluation Board (PEB) under Army regulations to inquire into the question of plaintiff's disability. In June 1974 plaintiff had requested reclassification into a military occupational specialty (MOS) which apparently would have been more commensurate with the physical limitations of his left leg. This was approved by his commanding officer, but the record does not disclose any further action being taken on plaintiff's request.

Plaintiff was examined again on April 30, 1975, and while the traumatic arthritis of the left leg and consequent L–3 profile was noted, plaintiff was again found fit for active duty. On June 11, 1975, plaintiff requested that his physical condition be passed upon by a PEB, presumably for determination of his eligibility for separation on account of service-connected disability. This request was never formally acted upon. However, an examining physician on September 2, 1975, found that plaintiff was qualified for "duty or separation" but recommended that plaintiff's condition be taken up before a Medical Board (MEB). [2]

---

1. Plaintiff's "L3" profile constitutes one of six factors in his overall physical profile under the physical profile serial system described in Army Regulation 40–501, Chapter 9. The system's purpose is to provide an index to an individual's functional capacity, the principal body organs or systems being designated by a letter, and the level of capacity by a number. The letter "L" denotes "lower extremities" and the number "3" signifies that, within certain restrictions, the individual is fit for military duty.

2. Army Regulation 40–3, Chapter 7, governs the composition and use of Medical Boards. Such boards are appropriately convened in cases in which PEB referral is contemplated or where medical fitness for return to duty is problematical or controversial, among other circumstances. AR 40–3, ¶ 7–5a.(1), –(4).

On September 12, 1975, an MEB composed of three physicians was convened to evaluate plaintiff's condition. Plaintiff was present at the meeting. The report which the MEB issued following the meeting noted the absence of plaintiff's spleen and the traumatic arthritis of his left knee and ankle, all three conditions marked "LD–NO, EPTS," meaning, not incurred in the line of duty, but existing prior to service. The MEB also found plaintiff to be suffering from moderate bilateral mixed hearing loss which was incurred in the line of duty. Plaintiff was found fit for return to duty or separation from the Army with permanent L3 and H3 profile.[3]

Shortly after the first MEB's conclusions were announced, plaintiff filed a written disagreement insofar as his leg condition was concerned. He claimed that his arthritis was only discovered in 1971, while he was in the Army, and therefore that condition should have been found to have been incurred in the line of duty and aggravated by military service. He further claimed that the combined effects of the pain in his leg and his hearing loss prevented him from performing his job and that his case should have been referred to a PEB under Army regulations on account of his questionable fitness for duty.

A PEB was not convened, but on October 16, 1975, plaintiff's case was reconsidered by the same MEB as considered it on September 12, 1975. Plaintiff was present at this second meeting. The Board reviewed the history of his condition and the x-rays of his leg with plaintiff and stated in its narrative summary: "[t]here is not recorded or recalled any subsequent injury or illness to which the now present arthritic changes could be ascribed." The Board then found that a preponderance of the evidence showed "a natural progression of a pre-existing condition" (i.e., from the fractures incurred in the 1960 automobile accident). It stated further: "[o]n the other hand, the time span of twelve years during

which this arthritic condition has been developing does make a reasonable argument for consideration of the service aggravation merely by the presence of twelve years of continuous active duty." Plaintiff was nonetheless considered fit for active duty or separation.

In its summary, the Board concluded that plaintiff's claim for service aggravation "may have some merit ... [but] ... adjudication of this question appears inappropriate within the finding of fitness for duty." It was also noted in the summary that plaintiff accepted the finding of fitness for duty under existing regulations, but wished to go on record as stating his belief that his arthritis should have been found to have been incurred in the line of duty by reason of service aggravation.

The desirability of convening a PEB to evaluate plaintiff's physical condition for purposes of disability retirement pay was never again raised by plaintiff with the Army authorities prior to his honorable discharge on December 9, 1975. It is significant that the discharge itself, some months prior to the end of plaintiff's last six-year enlistment period on March 31, 1976, came at plaintiff's voluntary request pursuant to AR 635–200. That regulation authorizes separation of enlisted personnel with less than six months remaining on their enlistment who are physically disqualified for their existing primary, secondary, or tertiary MOSs and cannot be retrained in 30 days or less.

During the summer and autumn of 1975, while he was attempting to have his medical status evaluated by a PEB, plaintiff was reduced in grade from Staff Sergeant (E–6) to Specialist Five (E–5) pursuant to disciplinary measures taken under Article 15 of the Uniform Code of Military Justice.[4] The record does not indicate that plaintiff ever challenged the disciplinary measures taken against him, which had the affect of making him ineligible for his scheduled promotion to Sergeant First Class (E–7) on March 1, 1976.

---

3. See supra note 1. The letter "H" signifies "hearing and ear" under the physical profile serial system.

4. 10 U.S.C. § 815 (1976).

## Discussion

In his motion for summary judgment plaintiff argues, first, that he was physically disabled and entitled to receive disability retirement pay under the provisions of 10 U.S.C. § 1201 (1976) at the time of his discharge from the Army after his request for reclassification was denied. He also claims that he was unlawfully separated without disability retirement pay because he was unlawfully denied a hearing before a PEB on his disability claims which, according to plaintiff, is accorded him of right under 10 U.S.C. § 1214 (1976). He argues further that the MEB which did review his case in 1975 was not a "statutory board" within the meaning of the retirement for disability provisions; that it erred in failing to refer his case to the PEB on account of his questionable fitness under Army regulations; that it erred in failing to find that his arthritis was "incurred" while he was entitled to basic pay; and, that in finding plaintiff's arthritis to have existed prior to service, the MEB improperly utilized statements signed by plaintiff respecting the origin of his condition which was involved under 10 U.S.C. § 1219 (1976). He contends that he was never advised of his right not to make any statements against his interest.

On account of the above, plaintiff asks that his reduction in grade on account of the disciplinary measures taken before his discharge be vacated and that the disability retirement pay that he deems himself entitled to be determined under 10 U.S.C. § 1372 (1976) on the basis of an E–7 rank, the grade to which he would have been promoted had it not been for his alleged disability.[5]

Defendant, on the other hand, does not address the merits of plaintiff's claims but argues *only* that they are barred by the doctrine of laches.

■ There is no doubt that the doctrine of laches is applicable to military pay and disability retirement pay cases. *Eurell v. United States,* 215 Ct.Cl. 273, 279, 566 F.2d 1146, 1150 (1947). The effect and rationale of the doctrine was lucidly stated by the former Court of Claims in *Brundage v. United States,* 205 Ct.Cl. 502, 505–06, 504 F.2d 1382, 1384 (1974), as follows:

"Laches is a 'fairness' doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. Failure to act promptly will operate as a bar to recovery where the delay results in injury or prejudice to the adverse party. The doctrine of laches is based upon considerations of public policy, which require, for the peace of society, the discouragement of stale demands. It recognizes the need for speedy vindication or enforcement of rights, so that courts may arrive at safe conclusions as to the truth. As an equitable defense, laches is applied apart from, and irrespective of, statutes of limitations."

Both elements of laches must be present before plaintiff's claims are deemed to be barred. These are his inexcusable delay in filing suit and prejudice resulting to defendant. *Deering v. United States,* 223 Ct.Cl. 342, 349, 620 F.2d 242, 245 (1980). The burden of establishing these elements is on the proponent (here the defendant) of the doctrine. *Adkins v. United States,* Ct.Cl. No. 420–80 (order entered September 29, 1981). The court will now test the facts to determine whether defendant has carried this burden.

■ The cause of action in a case for military retirement disability, such as this, accrues at the time of the plaintiff's discharge from service. *Eurell v. United States,* 215 Ct.Cl. at 276, 566 F.2d at 1148. Plaintiff was discharged on December 9, 1975, and his petition was filed in the former United States Court of Claims on December 7, 1981. Plaintiff took no action in any other court in the interval. It is appar-

---

**5.** Defendant correctly points out that plaintiff does not identify any errors in the disciplinary proceedings taken against him resulting in his reduction in grade and removal from the pro-

motions list. Assuming, without deciding that the court has jurisdiction over the matter, it appears there would still be nothing to decide.

ent, as defendant points out, that five years, 11 months and 28 days elapsed between the two events, which period was just three days shy of the expiration of the period of limitations on plaintiff's claims.[6] The former Court of Claims has frequently applied under such circumstances the bar of the doctrine of laches where the delay factor in instituting suit was a similar protracted time span or even a shorter period of inexcusable delay. *See e.g., Eurell,* 215 Ct.Cl. 273, 566 F.2d 1146 (five years after first administrative denial of disability claim); *O'Callaghan v. United States,* 216 Ct.Cl. 481 (1978) (one day shorter than the instant case from discharge date; two and one-half years from administrative denial); *McGahey v. United States,* 213 Ct.Cl. 717 (1977) (five years and four months from discharge date; four years and 10 months from first administrative denial); *Ellersick v. United States,* 221 Ct.Cl. 861, 618 F.2d 123 (1979) (less than five years and three months from discharge date).

■ Given the foregoing and absent any mitigating factors tending to excuse the apparent lack of diligence, plaintiff's lengthy delay in filing his claim with our predecessor court weighs heavily in favor of applying the laches doctrine. The passage of time alone, however, is not ordinarily sufficient to justify the bar. *Eurell,* 215 Ct.Cl. at 280, 566 F.2d at 1150. The Court of Claims has recognized that laches should not be applied in certain military cases so as to inhibit the timely pursuit of administrative remedies and "spur the commencement of suit as soon as discharges become final." *Cason v. United States,* 200 Ct.Cl. 424, 432, 471 F.2d 1225, 1230 (1973); *McGahey,* 213 Ct.Cl. at 718. In the instant case, however,

it is significant that neither plaintiff's submissions, nor his Official Military Personnel File indicates that he has at any time sought administrative relief for what he claims here and he has not explained his failure to do so.[7] Furthermore, it is noteworthy that plaintiff *requested* separation from the Army on account of his physical disqualification for his MOS, and yet still failed to seek disability retirement pay administratively, having failed to obtain it earlier. The record compels us to find that plaintiff should have acted diligently at an earlier point in time "to dispel the reasonable inference that he was satisfied with the [Army's] action." *See Ellersick v. United States,* 221 Ct.Cl. at 863, 618 F.2d 123 (plaintiff requested separation and then contested it as breach of his enlistment agreement). *Cf. Adkins v. United States,* Ct.Cl. No. 420–80 (order entered September 29, 1981) (laches applicable in military pay cases where plaintiff offered no clear reason for failing to assert right to correction of his records).

Despite the clear showing by defendant of an inexcusable delay on plaintiff's part, it is well settled that the defendant must also establish that it has been prejudiced thereby. However, the cases hold that the longer the delay, "the greater the shift to plaintiff of the task of demonstrating lack of prejudice." *Cason,* 200 Ct.Cl. at 431, 471 F.2d at 1229; *Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246.

In its brief, defendant claims to be prejudiced in this case because, were a trial to be had on the question of plaintiff's entitlement to disability, it would be "impossible to examine plaintiff . . . and pin-point with

---

6. 28 U.S.C. § 2501 (1976) allows six years from the time a cause of action first accrues for suit to be brought in this court.

7. Administrative relief in cases such as this generally is available by application to the proper Board for Correction of Military Records. *See* 10 U.S.C. §§ 1552–54 (1976). The Court of Claims has acknowledged that pursuit of that remedy is permissive only, and not a mandatory prerequisite to suit in military pay cases, in contradistinction to *civilian* pay cases where administrative relief is mandatory. *Ca-*

*son,* 200 Ct.Cl. at 432, 471 F.2d at 1229; *McGahey,* 213 Ct.Cl. at 718.

Defendant has submitted as its Exhibit C in this case the declaration under 28 U.S.C. § 1746 (1976) of John W. Matthews, Executive Secretary of the Army Board for Correction of Military Records (ABCMR). The declaration states in part that a diligent search of pertinent records revealed that no application for administrative relief was ever filed by plaintiff. Plaintiff does not dispute the averments of the declaration.

any degree of accuracy his exact condition as it existed prior to his separation [from military service] 5 years and 11 months ago." Inasmuch as the ultimate legal issue that would be raised at a trial on the merits here depends on the factual one of plaintiff's medical condition prior to discharge,[8] *cf. O'Callaghan,* 216 Ct.Cl. at 483, defendant justifiably claims that "the prejudice to the Government to defend this action, *i.e.,* to require the Government to reconstruct evidence regarding medical judgments made nearly 6 years ago, is manifest." Additionally, the court is persuaded that creditable grounds for finding the existence of substantial prejudice to the defendant may also be found from the fact that, in the search for truth in a "stale" case, such a this, "[w]itnesses' memories as to claimant's case will undoubtedly have dimmed and may not be able to be refreshed by the contemporaneous written record; some witnesses may no longer be available; [and] for all medical witnesses it will be hard, if possible at all, to reconstruct the medical condition . . . ." *O'Callaghan, id.* at 484. *See also McGahey,* 213 Ct.Cl. at 719.

The court believes that defendant has carried its burden by showing that it would be substantially prejudiced if it were required to defend this "stale" claim. Also, in view of his extreme tardiness in bringing his claims to this court, without any effort to seek relief administratively, it was incumbent on *plaintiff* to produce evidence showing a *lack* of prejudice to the defendant. *Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246. He has made no effort to do so. In view of this, the court is compelled to sustain the bar of laches against his claims.

██ There remains for discussion the question of defendant's right to recover on its counterclaim. Briefly stated, on or about November 21, 1971, plaintiff defaulted on a mortgage loan guaranteed by the Veterans Administration. The matter was referred to the General Accounting Office

for collection in March 1974, and in June 1975 plaintiff acknowledged his indebtedness to the United States in the amount of $899.70 plus interest and agreed to pay $30.00 monthly to satisfy the debt beginning on July 1, 1975. No payments were ever made pursuant to that agreement and the matter was referred for legal action to the Department of Justice in November 1976. No further action was taken until defendant filed its counterclaim herein on May 4, 1982.

Plaintiff's only response to defendant's counterclaim is the request in his own motion for summary judgment that his "claim be reduced by $899.70, plus all interest allowed by law, the amount of Defendant's counterclaim."

In spite of the apparent lack of a factual dispute concerning plaintiff's debt, it appears to the court from the scanty facts and documentation concerning it in the record, that defendant's counterclaim based on the debt is barred under applicable statutes of limitation. This court clearly has jurisdiction under 28 U.S.C. §§ 1503 and 2508 (1976) (as amended by the Federal Courts Improvement Act, Pub.L. 97–164, 96 Stat. 25 (1982)) to render judgment on timely counterclaims brought by the Government. Under 28 U.S.C. § 2415(a) (Supp. V 1981), however, an action on a contract brought by the Government is barred unless brought within six years after the right of action accrues. Section 2415(a) further provides specifically that "in the event of later partial payment or written acknowledgement of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgement . . . ." Here plaintiff's original default was in November 1971 and the Veterans Administration noted on its referral form to the General Accounting Office that the statute of limitations period began on November 11, 1971. The Government's action accrued again sometime in June 1975 when plaintiff un-

---

**8.** As an example, for plaintiff to be entitled to disability retirement pay, 10 U.S.C. § 1201(3)(B) (1976) requires that plaintiff's disability should have been at least 30% under the Veterans Administration standard schedule of rating disabilities at his discharge and the record before us contains no rating.

conditionally acknowledged the debt, but he never made any payments under the terms of that acknowledgement and more than six years had clearly passed by the time defendant filed its counterclaim here on May 4, 1982. The court also finds that the statement in plaintiff's motion for summary judgment filed May 21, 1982—"that [my] claim be reduced . . ."—does not constitute a new acknowledgement of the debt sufficient to cause the defendant's right of action to accrue again. That requested reduction in plaintiff's recovery was clearly based on plaintiff's assumption that he would prevail on his disability pay claim whereas an "acknowledgement" of debt must be a distinct, unqualified, unconditional recognition of an obligation. *See* 51 Am.Jur.2d *Limitation of Actions* §§ 325–30 (1970).

Under 28 U.S.C. § 2415(f) (1976), a time-barred counterclaim that does not arise out of the subject matter of the opposing party's claim (which is the case here) may be asserted only by way of offset and may be allowed in an amount not to exceed the amount of the opposing party's recovery. *See IML Freight, Inc. v. United States,* 225 Ct.Cl. 393, 639 F.2d 676 (1980). Plaintiff recovers nothing here and, in view of the foregoing, neither can the defendant.

### Conclusion

In accordance with the discussion above, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted as to plaintiff's petition and denied as to defendant's counterclaim. Therefore, judgment shall be entered dismissing plaintiff's petition and defendant's counterclaim.

IT IS SO ORDERED.