**Larry D. TILLEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 331–86C.**

United States Claims Court.

March 15, 1988.

Mary E. Baluss, Washington, D.C., for plaintiff; William F. Patterson, Jr., Morgan, Lewis & Bockius, of counsel.

John S. Groat, Washington, D.C., for U.S.

### ORDER

ROBINSON, Judge.

This military pay case is before the Court on defendant's motion for summary judgment based upon laches. For reasons stated herein, defendant's motion is denied.

*Facts* [1]

Plaintiff, Larry D. Tilley, enlisted in the Air Force in March 1965. After completing his four-year assignment as a ballistic missile analyst technician, he received an honorable discharge in 1969. Mr. Tilley returned to the Air Force in 1972 to undergo pilot training. Shortly after his return to

---

1. Defendant relies upon its motion for summary judgment for its answer to plaintiff's First Amended Complaint for Compensatory and Injunctive Relief. Therefore, for the limited purpose of its motion, defendant accepts the allegations contained in the amended complaint as true.

the service, Mr. Tilley became a reserve officer, although he did not remain in pilot training because of motion sickness. In September 1977, Mr. Tilley was promoted to Captain.

From 1972 through 1980, Mr. Tilley performed a variety of assignments. In 1980, Mr. Tilley was informed that he would be returned to missile duty. After an unsuccessful attempt to avoid this assignment, he reported for duty at Minot Air Force Base, North Dakota, on September 12, 1980, to await the start of the next basic missile launch officer course.

In late December 1980, Mr. Tilley reported to the 91st Strategic Missile Weapon CDB–72 class at Vandenberg Air Force Base. After several class briefings regarding the effects of nuclear warfare on civilian populations, Mr. Tilley expressed concerns arising from his understanding of nuclear weapons policy particularly with respect to "indiscriminate or unprovoked use of nuclear weapons in the absence of any threat to national security." Plaintiff's Comp., ¶ 18.

After further briefings at which Mr. Tilley learned that an unprovoked first strike would be contrary to United States policy, he stated he would have no problem performing duties as a missile launch officer. Mr. Tilley completed successfully the academic portion of his missile training, as well as the first missile trainer session. During subsequent training sessions, however, he continued to be interviewed regarding his conscience. He was later suspended from further training with the recommendation that he be permanently decertified from the Personnel Reliability Program (PRP) pursuant to Air Force Regulation (AFR) 35–99. The recommendation of permanent decertification from PRP duties became effective on January 20, 1981. He was thereafter denied certification for promotion and augmentation into the Regular Air Force. In addition, his secret level security clearance was revoked and he was prohibited from wearing the missile badge.

Mr. Tilley was notified on February 13, 1981, that discharge proceedings would be instituted against him pursuant to AFR 36–3, "Officer Personnel Administrative Discharge Procedures (Substandard Performance of Duty)."

At Mr. Tilley's Board of Inquiry Proceeding on July 23, 1981, decertification evidence, including the testimony of three of Mr. Tilley's superior officers, was presented to support his separation from the Air Force under AFR 36–3. At that proceeding, Mr. Tilley presented his own testimony and that of a former supervisor. However, the Board of Inquiry concluded to discharge Mr. Tilley, which was subsequently done on November 5, 1981.

On February 1, 1984, Mr. Tilley applied to the Air Force Board for Correction of Military Records (AFBCMR or Board) to be reinstated on active duty at the rank of Major, to receive back pay from the date of discharge, and to remove from his Air Force records all references to his discharge and the events leading thereto. The AFBCMR in an executive session held on January 31, 1985, found expressly that Mr. Tilley's application was timely filed and concluded that Mr. Tilley had demonstrated "the existence of probable error or injustice" in relation to his discharge. The AFBCMR recommended unanimously that Mr. Tilley's records be corrected and that he be reinstated to active duty. On May 22, 1986, prior to any final determination by the AFBCMR, Mr. Tilley filed his complaint in this Court seeking substantially the same compensatory and injunctive relief sought before the AFBCMR. Thereafter, the Assistant Secretary of the Air Force for Manpower Reserve Affairs and Installation rejected entirely the AFBCMR's unanimous recommendation and on May 29, 1986, denied Mr. Tilley's application to the AFBCMR.

Plaintiff filed on July 15, 1986, its First Amended Complaint for Compensatory and Injunctive Relief alleging that the Assistant Secretary's denial of his application to the AFBCMR was arbitrary and capricious, unsupported by the evidence of record, and contrary to applicable law and regulations. On July 21, 1986, defendant filed its motion

for summary judgement upon the basis of the equitable defense of laches.

### Discussion

Summary disposition requires that no genuine dispute exists as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the evidence and inferences must be viewed and drawn in a light most favorable to the non-moving party and any doubt must be resolved against the moving party. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed.Cir.1983); *Litton Industries Prod., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985).

■ The equitable defense of laches requires that the defendant prove: (1) that plaintiff unreasonably delayed the institution of this suit; and (2) that the delay will cause the defendant undue prejudice. *Brundage v. United States*, 205 Ct.Cl. 502, 505, 504 F.2d 1382, 1384 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). Therefore, to prevail in this case the defendant must prove there is no genuine issue of material fact as to either unreasonable delay or undue prejudice, *and* that, based on the relevant and material uncontroverted facts, viewed in the light most favorable to plaintiff, defendant is entitled as a matter of law to judgment in its favor on both the issue of unreasonable delay and undue prejudice. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 653–54 (Fed.Cir.1984).

■ The defendant contends that Mr. Tilley's delay in pursuing his claims for reinstatement and back pay is presumptively unreasonable. The defendant argues that Mr. Tilley's claim accrued for purposes of laches no later than the date of his honorable discharge on November 5, 1981, and that Mr. Tilley did nothing to assert his claim until he filed his complaint in this Court on May 22, 1986, over 54 months after the discharge. Further, defendant asserts that Mr. Tilley did not even apply for administrative relief until 27 months after his discharge, and that the time spent pursuing administrative remedies will not be excluded from the computation of delay. Given this presumptively unreasonable delay, defendant argues, prejudice may be presumed. According to defendant, the prejudice to it caused by Mr. Tilley's delay in seeking relief is not limited in this case to the difficulty of finding witnesses and documents, or the difficulty of reviving fading memories, but includes back pay and allowances of over $100,000 and the cost of retraining if Mr. Tilley succeeds on the merits.

The plaintiff counters that the defendant is not entitled to summary judgment because the time during which Mr. Tilley pursued his administrative remedies before the AFBCMR is not includable in the computation for laches purposes. Thus, plaintiff argues that laches is moot as to the only other period of delay—the 27 months between Mr. Tilley's discharge and his application to the Board—because the Air Force expressly determined that the application was timely filed. In addition, the plaintiff contends that his 27–month delay is not presumptively unreasonable, or, in fact, unreasonable. Finally, plaintiff disputes defendant's assertions of undue prejudice as unsubstantiated, which, at most, raise genuine issues of fact which prohibit a grant of the defendant's motion for summary judgment.

The defendant's contention that the plaintiff's delay in seeking *judicial* redress, a period of 54 months, constitutes inexcusable delay is without merit. It is abundantly clear from the uncontroverted evidence presented that 27 of the 54 months between Mr. Tilley's discharge and the filing of his suit in this Court were spent in the pursuit of administrative relief. Substantial legal precedent exists that this period must be excluded from any computation of the applicable laches period. *Andrews v. United States*, 6 Cl. Ct. 204 (1984), *aff'd sub nom., Burden v. United States*, 770 F.2d 179 (Fed.Cir.1985) (unpublished); *Cason v. United States*, 200 Ct.Cl.

424, 471 F.2d 1225 (1973). *Accord Yongue v. United States,* 9 Cl.Ct. 635 (1986).

There is solid rationale to support this rule. The various Boards were established by Congress "to allow each armed service to address its very specialized personnel measures internally" and to give the military a "fair chance to correct their mistakes themselves." *Cason v. United States,* 200 Ct.Cl. at 432, 471 F.2d at 1229–30. In addition, such a rule preserves scarce judicial resources. As the Court said in *Cason:*

> It would be improper and erroneous to apply laches in a way that would spur the commencement of suit as soon as discharges become final, before the results of seeking administrative relief are known.

*Id.* Thus, the 27–month period during which Mr. Tilley's application was pending before the AFBCMR will not be considered by this Court in determining the laches period to be applied.[2] *Andrews v. United States, supra.*

 The plaintiff's contention that laches is inapplicable to the 27–month period between his discharge and his application to the Board is correct. The delay issue was raised administratively by the Board itself and the Board specifically held that Mr. Tilley's application was timely filed. No satisfactory reasons have been advanced by the defendant for this Court to conclude otherwise and reverse this finding. Moreover, the reversal by the Assistant Secretary of the Navy of the Board's unanimous and generally favorable decision contains no criticism whatever of the Board's finding in this regard.

This Court is also persuaded that regardless of the Board's finding, the relatively short delay which occurred prior to Mr. Tilley's filing with the Board was reasonable and excusable due to the nature and cumulative impact of the several hardships which he cites, namely, his personal financial hardship, his unsuccessful earlier efforts to find *pro bono* counsel, his unsuccessful efforts to build a new career, and his family tragedy involving serious injury to his daughter in an automobile accident. To have applied the doctrine of laches in the face of these uncontested hardships, particularly when viewed in a light most favorable to the plaintiff, would appear to be highly inequitable and unfair to Mr. Tilley. *Gava v. United States,* 225 Ct.Cl. 676, 679 n. 2 (1980). *Park v. United States,* 10 Cl.Ct. 790 (1986), relied upon by the defendant, is distinguishable because the 44–month delay there involved occurred *after* the Board's action. Thus, delay was not a factor in the Board's consideration in *Park.* Moreover, there was no combination of extenuating circumstances shown in *Park* as the plaintiff has shown here. The Court, therefore, finds that the 27–month period prior to the filing of Mr. Tilley's application to the Board will not be counted for purposes of laches. *See, Stephen H. Muse v. United States,* 13 Cl.Ct. 372 (1987), for a detailed statement of legal principles involved in the determination of excusable delay in laches cases.

The defendant has alleged that it will be prejudiced by the granting of the relief sought by the plaintiff. However, this Court need not examine the question of prejudice to the government since the Court has found that the defendant has failed to meet its burden of showing unreasonable and inexcusable delay by the plaintiff in this challenge to his separation from the Air Force.

### Conclusion

The Court determines that neither the period after the plaintiff's discharge but prior to the filing of his application to the

---

**2.** Defendant's reliance upon *Mariner v. United States,* 1 Cl.Ct. 430, *aff'd,* 727 F.2d 1118 (Fed.Cir. 1983) (which did not involve administrative relief), and *Brundage v. United States, supra* (where administrative relief was sought and denied before discharge) is misplaced. In fact, two cases cited by the defendant to support its theory that the laches period continues to run during administrative review, *McGahey v. United States,* 213 Ct.Cl. 717, 553 F.2d 105 (1977) and *Steuer v. United States,* 207 Ct.Cl. 282 (1975), are inapposite. Moreover, the defendant's reliance upon *Andrews* and *Cason* is obviously in error since the holdings in those cases are directly contrary to the defendant's representations on brief.

Board nor the period during the pendancy of his application to the Board may be counted for purposes of laches. Thus, the defendant has failed to establish unreasonable and inexcusable delay on the part of the plaintiff which is the first of the two necessary elements that support the affirmative defense of laches. The Court, therefore, denies the defendant's motion for summary judgment.

The Court will establish by an appropriate separate order further proceedings in this action.

IT IS SO ORDERED.