**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents,**

Aeronautical Radio, Inc., et al., Intervenors.

No. 1116, Docket 75–4046.

United States Court of Appeals, Second Circuit.

Argued June 11, 1975.

Decided July 8, 1975.

Jules M. Perlberg, Chicago, Ill. (Howard J. Trienens, Chicago, Ill., F. Mark Garlinghouse and John F. Preston, Jr., New York City, on the brief), for petitioner.

John E. Ingle, Counsel, F. C. C., Washington, D.C. (Ashton R. Hardy, Gen. Counsel, Joseph A. Marino, Associate Gen. Counsel, F. C. C., Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson and Samuel R. Simon, Attys., Dept. of Justice, Washington, D.C., on the brief), for respondents.

William J. Byrnes, Washington, D.C. (Haley, Bader & Potts, Michael H. Bader, Kenneth A. Cox, Washington, D.C., on the brief), for intervenors MCI Telecommunications Corp. and Microwave Communications, Inc.

Thomas J. O'Reilly, New York City (Chadbourne, Parke, Whiteside & Wolff, Washington, D.C., Carl S. Rowe, Lloyd D. Young, Washington, D.C., on the brief), for intervenor United States Independent Telephone Assn.

Arthur Scheiner, Washington, D.C. (Wilner & Scheiner, Richard A. Solomon, Robert D. Hadl, Washington, D.C., on the brief), for intervenor Aerospace Indus. Assn. of America, Inc.

Richard M. Cahill, Stamford, Conn. (Walter Pond, George F. Shertzer, Stamford, Conn., Power, Jones & Schneider, John R. Jones, William H. Schneider, Columbus, Ohio, on the brief), for intervenors Gen. Tel. Co. of California, and others.

Robert P. Kane, Atty. Gen., Harrisburg, Pa., Gordon P. MacDougall, Special Asst. Atty. Gen., Washington, D.C., for Commonwealth of Pennsylvania.

Kirkland, Ellis & Rowe, Charles R. Cutler, John L. Bartlett, Michael Yourshaw, Washington, D.C., for Aeronautical Radio, Inc.

James E. Landry, Gen. Counsel, Steptoe & Johnson, William E. Miller, Washington, D.C., for Air Transport Assn. of America.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

FEINBERG, Circuit Judge:

On March 10, 1975, American Telephone and Telegraph Company (AT&T) filed in this court a petition for review of an order of respondent Federal Communications Commission[1] that rejected proposed AT&T rate increases on the ground that they were barred by an earlier Commission order prescribing a rate of return for AT&T. Thereafter, the Commission moved to transfer the review proceeding to the United States Court of Appeals for the District of Columbia Circuit, where a review of that earlier order was pending. The panel of our court then sitting denied the motion to transfer "without prejudice to renewal upon argument of the petition for review." In June, the expedited proceeding came on before this panel, two of whose members had heard the earlier motion to transfer. Intervenors MCI Telecommunications Corporation and Microwave Communications, Inc. (collectively, MCI) renewed the motion to transfer, which they had earlier supported. After hearing argument both on the motion and on the petition to review, and upon the fuller briefs now available to us, we now conclude that the proceeding should be transferred in the interest of justice and sound judicial administration to the District of Columbia Circuit.

## I  *Background*

AT&T's petition seeks review of a Commission Order released March 6, 1975, which rejected AT&T's revisions of certain tariffs setting forth rates for communications services. In January 1975, AT&T had filed tariff revisions designed to produce additional revenues of $717 million a year and to increase its rate of return on interstate operations to 10½–11 per cent. The Commission rejected these revisions on the ground that in 1972 it had prescribed, under section 205 of the Communications Act, 47 U.S.C. § 205, an 8½ per cent rate of return for AT&T. However, the Commission permitted AT&T to file smaller increases amounting to $365 million, which would approximate the rate of return allowed in 1972.

Briefly summarized, the underlying controversy between AT&T and the Commission is whether the Commission had the authority to block AT&T's 1975 tariff revisions on the basis of the 1972 rate of return finding. AT&T argues to us that the rate regulation structure of sections 203 and 204 of the Act, 47 U.S.C. §§ 203, 204, which provide for carrier-initiated rate changes, allows the carrier to decide when its rates need adjusting and then to change them accordingly. If the Commission wishes to challenge the carrier-set rates, it may suspend the revisions for no more than

---

1. The other respondent is the United States of America. For convenience, we will refer to respondents as "the Commission."

three months while it holds hearings on the lawfulness of the new rates. If a decision has not then been made, the new rates go into effect subject to refund if the final decision is against the carrier. The Commission, on the other hand, relies on section 205 of the Act,[2] which gives the Commission power, if it finds a charge to be unlawful, "to determine and prescribe" a just and reasonable charge to be followed thereafter. If there has been such a prescription, the carrier "shall not thereafter publish, demand, or collect any charge other than the charge so prescribed." The carrier may be relieved of that obligation and revise its charges "only with prior Commission permission." *American Telephone and Telegraph Co. v. FCC,* 487 F.2d 865, 874 (2d Cir. 1973). The Commission argues that section 205 also allows it to prescribe *rates of return,* and that the 1972 rate of return finding was such a prescription, blocking AT&T's 1975 filings made without prior Commission approval. AT&T contends that the Commission's assertion of such broad authority "contravenes the explicit statutory scheme of carrier initiated rates set forth in the Communications Act."[3] In addition, AT&T argues that the 1972 findings did not constitute a valid prescription.

According to the Commission, the prescription of AT&T's rate of return was ordered at the end of "Phase I" of the Commission's proceeding in Docket No. 19129, 38 FCC 2d 213 (1972), reconsidera- tion denied, 42 FCC 2d 293 (1973). The Commission had instituted Docket No. 19129 in 1971 to investigate the lawfulness of AT&T's tariffs filed in November 1970 and January 1971. The investigation was to proceed in two phases, a procedure apparently urged by AT&T. The rate of return was the basic question in Phase I, and other issues bearing in AT&T's revenue requirements were the subject of Phase II.[4] After extensive hearings, the Commission reached a decision on Phase I in November 1972. As a result of the rate of return there approved, AT&T was allowed to put into effect higher "interim" rates. However, the Commission made clear, it says, that it was not passing upon specific rate schedules but instead was prescribing a range of reasonableness for AT&T's rate of return. Rates "reasonably designed" to produce earnings within that range were acceptable. Those meant to produce higher returns violated the prescription and would be rejected.[5]

The Phase I decision is now under consideration in the District of Columbia Circuit in the consolidated cases of *Ralph Nader and Reuben B. Robertson III v. FCC* (No. 73–1045), and *Microwave Communications, Inc. and MCI Telecommunications Corp. v. FCC* (No. 73–2051). The *Nader* petitioners oppose the Phase I decision as allowing AT&T too high a rate of return. MCI there argues, among other things, that it was not afforded "the full opportunity for hearing" on the "interim" rates put into effect by AT&T,

2. Section 205(a) provides:
   Whenever, after full opportunity for hearing, upon a complaint or under an order for investigation and hearing made by the Commission on its own initiative, the Commission shall be of opinion that any charge, classification, regulation, or practice of any carrier or carriers is or will be in violation of any of the provisions of this chapter, the Commission is authorized and empowered to determine and prescribe what will be the just and reasonable charge or the maximum or minimum, or maximum and minimum, charge or charges to be thereafter observed, and what classification, regulation, or practice is or will be just, fair, and reasonable, to be thereafter followed, and to make an order that the carrier or carriers shall cease and desist from such violation to the extent that the Commission finds that the same does or will exist, and shall not thereafter publish, demand, or collect any charge other than the charge so prescribed, or in excess of the maximum or less than the minimum so prescribed, as the case may be, and shall adopt the classification and shall conform to and observe the regulation or practice so prescribed.

3. Petition for Review, at 2.

4. As we understand it, Phase II is to consider the propriety of specific rates and charges filed by AT&T, including the rate relationships among AT&T's various services.

5. 42 FCC 2d at 299–300.

as required by section 204. The Commission is defending the Phase I decision in the District of Columbia Circuit, as is AT&T, which has intervened in that proceeding. That court has received full briefs and has heard oral argument, but has not yet issued its decision.

## II  *Propriety of Transfer*

■ Before considering whether we should transfer this proceeding, as MCI requests, logically we must decide whether we have the power to do so. MCI suggests that 28 U.S.C. § 2112(a), reproduced in the margin,[6] authorizes a transfer here, and that, in any event, we have inherent power to order it. As to the former, MCI points out that the statute is not limited to cases where review of the same order is sought in two courts of appeals. The requirement is merely that there be proceedings *"with respect to"* the same order (emphasis added), a standard that, according to MCI, is met here. AT&T responds that the only order involved in the review proceeding in this court is the Commission Order of March 6, 1975, rejecting AT&T's tariffs filed two months earlier. Therefore, this court and the District of Columbia Circuit are plainly not entertaining proceedings "with respect to the same order" within the meaning of section 2112(a). We regard AT&T's view of the case as unduly restricted. Cf. *American Civil Liberties Union* v. *FCC,* 486 F.2d 411, 414 (D.C.Cir. 1973). However, we need not decide whether section 2112(a) au-

thorizes transfer here because we believe we have the inherent power to order it in the interest of justice and sound judicial administration. While we apparently have not so ruled recently, see *Pan American World Airways, Inc.* v. *CAB,* 380 F.2d 770, 775 (2d Cir. 1967), aff'd by an equally divided court, 391 U.S. 461, 88 S.Ct. 1715, 20 L.Ed.2d 748 (1968),[7] the great weight of authority now is that such inherent power exists. See, e. g., *Farah Manufacturing Co.* v. *NLRB,* 481 F.2d 1143, 1145 (8th Cir. 1973); *Natural Resources Defense Council, Inc.* v. *EPA,* 465 F.2d 492, 495–96 (1st Cir. 1972); *J. L. Simmons Co.* v. *NLRB,* 425 F.2d 52, 54 (7th Cir. 1970), cert. denied, 404 U.S. 986, 92 S.Ct. 447, 30 L.Ed.2d 371 (1971); *Eastern Air Lines, Inc.* v. *CAB,* 354 F.2d 507, 510 (D.C.Cir. 1965); *Panhandle Eastern Pipe Line Co.* v. *FPC,* 337 F.2d 249 (10th Cir. 1964); cf. *Koehring Co.* v. *Hyde Construction Co.,* 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966); contra, *Gulf Oil Corp.* v. *FPC,* 330 F.2d 824 (5th Cir. 1964). In addition, venue and jurisdiction are proper in both our court and the District of Columbia court, 28 U.S.C. §§ 2342, 2343, and thus do not present a problem. Cf. *Eastern Air Lines, Inc.* v. *CAB, supra,* 354 F.2d at 510.

■ Since we conclude that we have the power to grant MCI's motion, we now consider if, in the exercise of our discretion, we should do so. Whether or not the proceeding in the District of Columbia Circuit involves the same order as that under attack here, the proceedings in the two courts are closely related.

---

6.  28 U.S.C. § 2112(a) provides in part:

> If proceedings have been instituted in two or more courts of appeals with respect to the same order the agency . . . concerned shall file the record in that one of such courts in which a proceeding with respect to such order was first instituted. The other courts in which such proceedings are pending shall thereupon transfer them to the court of appeals in which the record has been filed. For the convenience of the parties in the interest of justice such court may thereafter transfer all the proceedings with respect to such order to any other court of appeals.

7.  But cf. *L. J. Marquis & Co.* v. *SEC,* 134 F.2d 335 (2d Cir. 1943) (*per curiam*), in which we apparently accepted the suggestion made by the Third Circuit in *Columbia Oil & Gasoline Corp.* v. *SEC,* 134 F.2d 265 (3d Cir. 1943), that we transfer the *Marquis* action to it so that plaintiffs in our case could have their petition for review acted upon by a court where the record had been filed. After we transferred the case, the Third Circuit did reach the merits. *L. J. Marquis & Co.* v. *SEC,* 134 F.2d 822 (3d Cir. 1943). This, of course, all arose under a set of circumstances that presumably would be taken care of today by § 2112(a).

A decision in favor of Nader or MCI in the District of Columbia Circuit on the ground that Phase I was improperly conducted or that the two-phase method of rate determination was invalid might destroy the basis of the Commission's Order that AT&T asks us to review here. This would, in effect, moot this proceeding.

Moreover, having proceedings in two courts has resulted in shifts by the parties—if not of position, at least of emphasis—as to whether the Phase I proceeding "prescribed" anything, whether rates or rates of return, and, if so, what was prescribed. For example, in the District of Columbia Circuit, Nader's position is that the "interim" rates set by AT&T as a result of the Phase I decision were prescribed, making judicial review of them appropriate. To counter this, the Commission there says that the "interim" *rates* were, in effect, carrier-made and *not prescribed.*[8] Here, however, the Commission argues that the Phase I decision *prescribed a rate of return,* which prevents AT&T from now changing its rates. Similarly, MCI argues in the District of Columbia Circuit that the Phase I decision was improper because the Commission put off considering specific rates and charges until Phase II.[9] Yet in this court, MCI supports the Commission's attempt to use the Phase I decision to block AT&T's 1975 rate increases.[10] Finally, AT&T contends in the District of Columbia Circuit that the Commission decision to conduct its inquiry in two phases was within its wide discretion.[11] But AT&T argues to us that the Commission does not have

the discretion to prescribe rates of return.[12] We realize that these are technical concepts and that the positions taken by the parties in the two courts of appeals may be technically consistent. But it takes a great deal of explanation to reveal the consistency, which at best is far from complete.

In addition, AT&T appears to have taken conflicting positions in this court. On the original Commission motion to transfer made in this court,[13] Commission counsel stated in support of its motion that AT&T was apparently making two contentions on its petition for review: (1) The Commission was not authorized to prescribe a rate of return so as to prevent AT&T from filing subsequent rates which will result in a greater rate of return, and (2) assuming it had this authority, the Commission in its Phase I order did not take adequate action to prescribe a rate. In response, counsel for AT&T stated, in effect, that the second issue would not be before us; the *only* issue would be whether the Commission had the authority to prescribe a rate of return at all. It seemed that if we decided that the Commission did have such authority, AT&T was ready to concede that the Phase I decision in Docket No. 19129 in 1972 was such a prescription. But, MCI points out, now that AT&T has defeated the earlier motion to transfer, it argues in its briefs[14] that the Phase I decision was not a prescription of a rate of return. Thus, were we to decide that the Commission did possess the power to prescribe rates of return, we would then be forced to review the 1972 hearings to see

---

8. Brief for Respondent Commission filed in the District of Columbia Circuit on May 30, 1974, at 41.

9. Brief for Petitioner MCI filed in the District of Columbia Circuit on Jan. 11, 1974, at 52.

10. Brief for Intervenor, MCI, Points II, III.

11. Brief for Intervenor AT&T filed in the District of Columbia Circuit on June 6, 1974, at 24–27.

12. Reply Brief for Petitioner AT&T, Part I.

13. The Commission has not renewed its motion to transfer because it "does not wish to

prolong the matter." Response to [MCI's] Motion to Transfer, at 2. Nevertheless, the Commission points out that:

> AT&T should not be permitted to argue at one point that a certain issue is not involved in this case, and then present arguments on that very issue when it has successfully resisted transfer. That is precisely what AT&T has done in this case.

Id.

14. Brief for Petitioner AT&T, at 40; Reply Brief for Petitioner, AT&T, at 16–19.

if that is what the Commission did. AT&T replies that this court "need never reach the question of whether there was a so-called 'prescription' of AT&T's rate of return" in the Phase I decision.[15] But that is true only if we agree with AT&T that the Commission lacked the power to make such a prescription in the first place. If not, we do not understand AT&T to be withdrawing its fall-back position that, in any event, there was no prescription of a rate of return in 1972. In addition, on this latter issue, which AT&T has injected into this proceeding, if we must consider the 1972 Commission decision, this court and the District of Columbia Circuit might reach inconsistent results as to the validity, meaning or effect of the Phase I determination. Cf. *Midwest Television, Inc.* v. *FCC,* 364 F.2d 674 (D.C.Cir. 1966).

In short, the shifting positions of the parties point up the difficulty of treating the proceeding here in isolation. AT&T urges us to respect a petitioner's latitude in its choice of forum, as we did in *Pan American World Airways, Inc.* v. *CAB, supra,* 380 F.2d at 774–75. Of course, we would ordinarily strive to do so. But under these "unusual" circumstances, id., petitioner's latitude in choice of forum cannot be controlling. There is no doubt, moreover, that the District of Columbia Circuit is intimately familiar with the background of this controversy through review of the Phase I decision. See *Eastern Air Lines, Inc.* v. *CAB, supra,* 354 F.2d at 510. AT&T responds that the District of Columbia Circuit itself has disapproved any theory of "specialization of tribunals" or "of particular judges." *Public Service Comm.* v. *FPC,* 472 F.2d 1270, 1272 (D.C.Cir. 1972). We do not quarrel with that thought, but we do not think a transfer on these facts is inconsistent with it. We have given the matter careful consideration and believe that a transfer should be ordered in the interest of justice and sound judicial administration. We stress, however, that nothing in this opinion should be taken as expressing any view whatever on the merits of AT&T's petition for review.

The motion to transfer is granted.

**15.** Opposition of AT&T to MCI Motion to Transfer, at 3.