Gerry E. PEARCE, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR and McDonnell Douglas Corporation and Industrial Indemnity Company, Respondents.

No. 79–2257.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1980.

Decided April 8, 1981.

Rehearing and Rehearing En Banc
Denied June 8, 1981.

E. Bruce Nangle, Nangle & Nangle, Clayton, Mo., for petitioner.

Catherine A. Giacona, U. S. Dept. of Labor, Washington, D. C., for respondents.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and SKELTON, Senior Judge.*

* The Honorable Byron G. Skelton, Senior Judge of the United States Court of Claims, sitting by designation.

1. The McDonnell Douglas Corporation, who, with its workers' compensation carrier, intervened as respondents herein.

SKELTON, Senior Judge.

The basic facts in this case are set forth in the briefs of the parties as follows, with minor changes and additions.

Petitioner-Appellant Gerry E. Pearce, a covered employee under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (1970 and Supp. V, 1975) (the Act) as extended by the Defense Base Act, 42 U.S.C. §§ 1651, et seq. (1970) pursuant to § 21(c) of the Longshoremen's Act, 33 U.S.C. § 921(c) (Supp. V, 1975), was injured in an accident near a United States Air Force Base in Thailand on November 14, 1970, while working for McDonnell Douglas Corporation.[1] He filed a claim for compensation with the United States Department of Labor 15th Compensation District, which is headquartered in Hawaii. Before the Hawaii office acted on the claim, Pearce moved to Chicago, and, for the convenience of all parties, the United States Office of Workers' Compensation Programs (OWCP) transferred his claim to the Chicago office for investigation and resolution in accordance with 33 U.S.C. § 939(b) (1972). Pearce did not contest the transfer.

A period of evaluation followed this transfer, and on December 17, 1974, the deputy commissioner entered his order awarding Pearce compensation benefits for temporary total disability from November 5, 1970, to May 28, 1973, and for permanent total disability from May 29, 1973, "and continuing." This action was taken without a hearing as none of the interested parties requested one and the deputy commissioner did not consider a hearing necessary. Thereafter, Pearce secured the assistance of present counsel and filed, on or about July 23, 1975, a "motion for modification * * * of the award * * * and [an] award granting [Pearce] a lump sum payment."[2] This motion was filed with the same deputy com-

2. See Act §§ 14(j), 22, 33 U.S.C. §§ 914(j), 922 (1970).

missioner who had made the initial award. Attached to the motion was a certain Long Term Group Disability Insurance Policy, Number MCP 5090, issued by General American Life Insurance Company, under which Appellant claimed he could qualify for benefits if granted the lump sum award as prayed. The motion urged, in substance, that commutation of Pearce's compensation entitlement would restore his eligibility for benefits under such disability insurance policy, which provided for an offset of periodic workers' compensation benefits.[3] In the same motion, Pearce requested for the first time an evidentiary hearing on the issues raised. The deputy commissioner responded that he no longer had authority to hold hearings[4] and also advised:

> I should mention that over the years the Office of Workers' Compensation Programs policy has been against the approval of lump sum payments except in rare and exceptional circumstances where it can be documented that lump sum payment will facilitate the rehabilitation of the injured worker and afford lasting economic betterment for him.

On advice of the deputy commissioner, Pearce submitted a form application for a lump sum award on September 2, 1975. By letter of September 23, 1975, the deputy commissioner requested further information from Pearce, including the answers to these two questions:

> (1) What specific benefits under the policy would Mr. Pearce receive and for how long in the event he is paid in a discounted lump sum?
>
> (2) Is it an absolute guaranteed certainty that policy benefits per (1) would be paid after a lump sum award?

Pearce's answer of October 1, 1975, was that, after offset of social security benefits,[5] which were expected to decrease within the next three years as a result of his children attaining majority, his benefits would be $383.10 per month, and that the policy was an enforceable contract. Other correspondence followed.[6]

On February 9, 1976, McDonnell Douglas and its workers' compensation carrier, the Industrial Indemnity Company,[7] filed a memorandum opposing Pearce's application for commutation. The memorandum points out that the disability policy also sets off

---

3. The offset provision states, in pertinent part:
   The Reduction Amount applicable to each monthly period of total disability for which a Monthly Income Benefit is payable under this policy is an amount equal to the sum of the following:
   a) * * *.
   b) * * *.
   c) the amount of any periodic income benefits payable to the employee (including any amounts payable on account of his dependents) for that monthly period with respect to disability under the Federal Social Security Act, under the Railroad Retirement Act, by any federal, state, municipal or other governmental agency, or pursuant to any Workmen's Compensation Act, or any other laws of a similar character (excluding specific allowances for loss of use of a body member, dismemberment, or disfigurement), except any such benefits payable under any life insurance issued by the Veteran's Administration;
   d) the amount of any periodic benefits payable to the employee (including any amounts payable on account of his dependents for that monthly period under a retirement plan covering employees of the Employer and toward which the Employer contributes;

e) * * *.

\* \* \* \* \* \*

4. See Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub. L.No. 92–576 [hereinafter cited as 1972 Amendments], § 14, 86 Stat. 1251, 1261 (1972) [codified at 33 U.S.C. § 919(d) (Supp. V, 1975)].

5. See note 3, supra.

6. Although it is immaterial to this proceeding, the next event was Pearce's motion for "re-assessment of compensation award," urging that he was entitled to higher periodic compensation payments pursuant to § 10(h)(1) of the Longshoremen's Act, 33 U.S.C. § 910(h)(1) (Supp. V, 1975) (R. 122–26). Pearce prevailed on this separately raised and separately decided issue.

7. The carrier on Pearce's disability policy is the General American Life Insurance Company and is not a party to these proceedings. We intimate no opinion as to the effect commutation may have on Pearce's entitlement to benefit payments on this policy, as this question is not before us.

benefits under a retirement plan towards which the employer contributes [8] and argues that it is unlikely, even assuming that commuting the compensation benefits would immunize Pearce from their offset, that Pearce would ever collect any money under the disability policy—particularly in light of the general tendency of social security benefits to be increased.

On February 16, 1976, Pearce replied to the memorandum filed by McDonnell Douglas. Pearce reiterated that his social security benefits would soon be decreased when his youngest child attained "his social security majority" and urged that even with the offset of the retirement plan benefits, he would still receive $134.74 per month on the disability policy if his compensation benefits were commuted. In sum, then, the dispute amounted to this: Pearce argued that, under commutation, he would get $134.74 per month more under the policy whose benefits he had earned by paying premiums, and McDonnell Douglas argued that that difference would most likely soon be absorbed by increases in social security benefits.[9]

On August 1, 1976, Pearce filed a "motion for judgment on evidence previously submitted." On August 27, 1976, the deputy commissioner rejected Pearce's application for commutation, upon the following findings:

1. The claimant seeks a lump sum which he proposes to invest in certificates of deposit with an expected 6 to 7 percent return and that by obtaining a lump sum he would qualify for certain benefits under a disability income insurance policy.

2. That compensation payable under the terms of the compensation awards provides the claimant guaranteed, risk-free benefits currently at the rate of $107.00 per week; that he qualifies for statutory increases in such weekly rate proportionate to applicable percent increases in the National Average Weekly Wage each October as provided in section 10(f) and in the event of his death from causes other than the injury certain benefits would continue for a surviving widow and/or children under section 9 of the Act.

3. The Deputy Commissioner has considered the evidence presented by the claimant in support of his application, including the claimant's current financial assets and monthly income from combined sources, and concludes that a lump sum award for the purpose requested is not in the interest of justice.

Pearce thereupon appealed to the Benefits Review Board urging essentially (1) that the deputy commissioner should have ordered a hearing on the matter "at least for his own record" and that the insurer on the disability policy should have been present and that the deputy commissioner's denial of Pearce's application for commutation was irrational, arbitrary, capricious, and an abuse of discretion, and also insufficiently explained and unsupported by substantial evidence. Pearce's arguments on the latter point were chiefly that it was unjust for the deputy commissioner to deprive Pearce of the benefits for which he had paid premiums under the policy by refusing to commute the compensation award and, to the extent that the deputy commissioner's findings suggested an assumption that the periodic compensation benefits

---

8. See note 3, supra.

9. We wish to point out that the four percent discount rate specified in § 14(j) of the Longshoremen's Act is unchanged since 1927. See Longshoremen's and Harbor Workers' Compensation Act, ch. 509, § 14(j), 44 Stat. 1424, 1433 (1927). Since it is now relatively easy to earn more than four percent on an investment, the discount favors the claimant, in this case by two or three percent, and disfavors McDonnell Douglas and its carrier—both of which presumably will earn more than four percent on the lump sum if allowed to retain it. Additionally,

§ 22 of the Longshoremen's Act permits modification "on the ground of a change in conditions or because of a mistake in a determination of fact" * * * at any time prior to one year after the date of the last payment of compensation * * *." 33 U.S.C. § 922 (1970). Thus, the extent of an employer's liability is never settled until this one-year period has expired—and it will presumably expire sooner if Pearce's entitlement is commuted, thus foreclosing an application by McDonnell Douglas that Pearce is no longer permanently totally disabled.

were more risk-free than Pearce's proposed investment of the lump sum, and less certain to ensure Pearce's economic betterment, that such an assumption was generally unwarranted, particularly in the absence of any consideration of the relative tax advantages of the two possibilities.

The Board issued its decision affirming the deputy commissioner's decision on March 14, 1977, in 5 BRBS 573. The Board ruled that the deputy commissioner's decision declining to commute Pearce's benefits was reversible only for abuse of discretion and concluded:

* * * [T]he claimant has failed to meet his burden of proving that the deputy commissioner's rejection of a lump sum application was unreasonable, arbitrary, capricious, or not "in the interest of justice." 5 BRBS at 577.

As to Pearce's request for an evidentiary hearing, the majority of the Board members reasoned:

It is also our opinion that, contrary to claimant's contention, no formal hearing by the deputy commissioner is required in the case now before the Board. The Board may, therefore, review the record created by the deputy commissioner in his investigation of the case and determine whether there has been an abuse of discretion on his part. The record here shows that both the claimant and the employer were allowed to submit pleadings and documents to the deputy commissioner. Based upon those submissions, and after a period of investigation, the deputy commissioner denied claimant's application for the reasons outlined in his order. We find no abuse of discretion in the deputy commissioner's action in rejecting claimant's application for a lump sum award without conducting a formal hearing. 5 BRBS at 578.

Following the adverse decision of the Board, Pearce filed this appeal in the United States Court of Appeals for the Ninth Circuit, alleging that the decision of the Board was an abuse of discretion, was irrational, arbitrary, capricious and unsupported by substantial evidence, and that the Board erred in not affording him a hearing. The defendant alleged that the Ninth Circuit Court of Appeals was without jurisdiction to hear the appeal. That court, in a thorough and comprehensive opinion held in *Pearce v. Director, OWCP*, 603 F.2d 763 (9th Cir. 1979) that exclusive jurisdiction to hear the case was vested in the Seventh Circuit Court of Appeals and that it had the authority to transfer the case to the Seventh Circuit, and it accordingly did so. In this regard, the Ninth Circuit Court held:

From all of the foregoing, we conclude that the Court of Appeals for the Seventh Circuit is the proper court to hear and decide this case.

III. *Transfer to the Seventh Circuit.*

We have held that we have power to transfer a pending case to another circuit even when the latter circuit has exclusive jurisdiction and venue to review the order in question. *Pacific Gas and Electric Co. v. Federal Power Com'n*, 9 Cir., 1958, 253 F.2d 536.[3] Thus, we can transfer this case even though exclusive jurisdiction is in the Seventh Circuit, not this circuit. We have the jurisdiction necessary to enable us to make the transfer. *See also Valley Vision Inc. v. F.C.C.*, 9 Cir., 1968, 399 F.2d 511, in which we relied on 28 U.S.C. § 2112(a).

[3] Most of the Courts of Appeals have held or said that they have inherent power to transfer cases filed with them that belong in another circuit to the proper circuit.

D.C. Circuit:

*Abourezk v. F.P.C.*, 1975, 168 U.S.App.D.C. 246, 247, 513 F.2d 504, 505, n.1; *NLRB v. Wilder Mfg. Co.*, 1975, 147 U.S.App.D.C. 152, 155, 454 F.2d 995, 998; *Eastern Air Lines, Inc. v. C.A.B.*, 1965, 122 U.S.App.D.C. 375, 378, 354 F.2d 507, 510; *Pacific Gas & Electric Co. v. F.P.C.*, 1958, 106 U.S.App.D.C. 281, 282, 272 F.2d 510, 511.

First Circuit:

*Natural Resources Defense Council v. E.P.A.* 1972, 465 F.2d 492, 495–496.

Second Circuit:

*Am. Tel. & Tel. Co. v. F.C.C.*, 1975, 519 F.2d 322, 325.

Fifth Circuit:

*Tenneco Oil Co. v. E.P.A.*, 1979, 592 F.2d 897, 900, vacating *Tenneco Oil Co. v. E.P.A.*,

1978, 577 F.2d 931, 933; *Georgia Pacific Corp. v. F.P.C.*, 1975, 512 F.2d 782, 783.
Sixth Circuit:
  *Dayton Power & Light Co. v. E.P.A.*, 1975, 520 F.2d 703, 708.
Seventh Circuit:
  *J. L. Simmons Co. v. N.L.R.B.*, 1970, 425 F.2d 52, 54.
Eighth Circuit:
  *Meat Price Investigators Ass'n v. Spencer Foods*, 1978, 572 F.2d 163, 167 n.2; *McCoy v. U.S. Bd. of Parole*, 1976, 537 F.2d 962, 966–967; *Peabody Coal Co. v. E.P.A.*, 1975, 522 F.2d 1152, 1153–1154; *Farah Mfg. Co., Inc. v. N.L.R.B.*, 1973, 481 F.2d 1143, 1145; *Panhandle Eastern Pipe Line Co. v. F.P.C.*, 1965, 343 F.2d 905, 908–909.
Tenth Circuit:
  *Panhandle Eastern Pipe Line Co. v. F.P.C.*, 1964, 337 F.2d 249, 251–252.
603 F.2d at 771.

We transfer this case, rather than dismissing it, because we see no reason to require Pearce to start all over again. Moreover, were we to dismiss, and were Pearce then to petition the Seventh Circuit, he would probably be held to be time barred by § 21(b) (33 U.S.C. § 921(b)). And if he were to seek a new hearing under § 19 (33 U.S.C. § 919), he might well be met with an argument that his application should be denied on the ground of administrative *res judicata*, or the doctrine of finality of administrative action. *See Laden v. Andrus,* 9 Cir., 1979, 595 F.2d 482, 486. Transfer keeps the case before us alive, and that is what ought to happen.

We approve the holding of the Ninth Circuit that jurisdiction lies in the Seventh. In any event, both that holding and the decision that transfer was appropriate in lieu of dismissal and filing anew are now *res judicata*. Accordingly, we will decide the controversy.[10]

After reading the briefs and hearing oral argument of the parties, and carefully reviewing the record as a whole, we have concluded that the decision of the Board must be reversed because of the failure of the deputy commissioner and the Board to comply with the regulations and the statute applicable to this case.

When the Act was originally enacted it gave the deputy commissioner the sole authority to approve commutation of compensation payments to a lump sum award when he determined that it was "for the best interests of a person entitled to compensation." Longshoremen's and Harbor Workers' Compensation Act, ch. 509, § 914(j), 44 Stat. 1424, 1433 (1927). The 1934 amendment changed the standard to be used by the deputy commissioner for commutation from "for the best interests of a person entitled to compensation" to "in the interest of justice", and also added a requirement that the commutation be approved by the United States Employees' Compensation Commission. Act of May 26, 1934, ch. 354, § 4, 48 Stat. 806, 807. A number of changes were made in the Act by the amendment of 1972. The commutation provision 914(j) now provides in pertinent part, as follows:

  Whenever the deputy commissioner determines that it is in the interest of justice, the liability of the employer for compensation, or any part thereof as determined by the deputy commissioner with the approval of the Secretary, may be discharged by the payment of a lump sum equal to the present value of future compensation payments commuted, computed at 4 per centum true discount compounded annually. The probability of the death of the injured employee or other person entitled to compensation before the expiration of the period during which he is entitled to compensation shall be determined in accordance with the American Experience Table of Mortality * * *. The probability of the happening of any other contingency affecting the amount or duration of the compensation shall be disregarded.

33 U.S.C. § 914(j).

Regulations promulgated by the Department contain similar provisions as follows:

  Commutation of payments; generally.

---

**10.** The intervenors, McDonnell Douglas Corporation, and its Workmen's Compensation insurer, The Industrial Indemnity Company, have filed a brief herein in which they urge the court to affirm the decision of the Board.

(a) Pursuant to section 14(j) of the Act, 33 U.S.C. 914(j), the deputy commissioner may determine that, in the interest of justice, the liability of the employer for compensation, or any part thereof, may be discharged by the payment of a lump sum equal to the present value of future payments commuted, computed at 4 per centum true discount compounded annually.

(b) Applications for commutation of future benefits shall be made to the deputy commissioner, on a form prescribed by the Director, OWCP, for that purpose. Applications shall be supported with a statement of the reasons for such application, together with such pertinent data as may lend support thereto.

(c) Applications for commutation of payments in disability cases will be accepted only when a compensation order has been filed in which the quality of the disability is found to be permanent and the duration of such disability is fixed by said order.

20 C.F.R. § 702.141(a), (b) and (c).

The regulations also provide that the action of the deputy commissioner on commutation of payments is not final without the prior approval of the Director of the Office of Workers' Compensation Programs (OWCP).[11] 20 C.F.R. § 702.141(d) so provides as follows:

(d) Commutations of payments shall be considered by the deputy commissioner, but no final action shall be taken in any case without the prior approval of the Director, OWCP.

Thus, it is clear from the statute and the regulation quoted above that the deputy commissioner cannot enter a final order on commutation until *after* he receives the *prior* approval of the Director of the OWCP.

Pearce contends that he had a right to a hearing on his application for commutation by reason of the following provisions of § 919(c) of the Statute:

(c) The deputy commissioner shall make or cause to be made such investigations as he considers necessary in respect of the claim, and *upon application of any interested party shall order a hearing thereon.* (Emphasis supplied).

The respondent says that this section of the Statute only applies to an original claim for compensation and not to an application for commutation of payments once an award has been made. We have carefully considered respondent's argument and recognize that such a construction of the section is possible if it is read in isolation. However, we have concluded that we must reject it. When the statute and the regulations are considered together as a whole, it is evident that the right to a hearing applies to all claims and applications for workmen's compensation benefits, including commutation.

The regulations provide that if the parties cannot agree on a resolution of the claim after conferences with the deputy commissioner, he shall transfer the case to the Office of the Chief Administrative Law Judge for a hearing if any party has requested a hearing. See 20 C.F.R. § 702.316, which provides in pertinent part:

* * * if he or she [the deputy commissioner] is satisfied that any further conference would be unproductive, *or if any party has requested a hearing*, the deputy commissioner shall prepare the case for transfer to the Office of the Chief Administrative Law Judge. (Emphasis supplied).

The statute also requires the hearing to be conducted by an administrative law judge.[12] Title 33 U.S.C. § 919(d) and (e) provides:

Provisions governing conduct of hearing; administrative law judges

(d) Notwithstanding any other provision of this chapter, any hearing held

---

11. The Director of the OWCP is the designee of the Secretary and acts for him with respect to commutation of payments.

12. Originally, hearings were conducted by the deputy commissioners, and they made findings of facts and conclusions of law, and entered final orders thereon. Now, all of these powers and duties have been transferred to and vested in the administrative law judges.

under this chapter shall be conducted in accordance with the provisions of section 554 of Title 5. Any such hearing shall be conducted by an administrative law judge qualified under section 3105 of that Title. All powers, duties, and responsibilities vested by this chapter, on October 27, 1972, in the deputy commissioners with respect to such hearings shall be vested in such administrative law judges.

Filing and mailing of order rejecting claim or making award

(e) The order rejecting the claim or making the award (referred to in this chapter as a compensation order) shall be filed in the office of the deputy commissioner, and a copy thereof shall be sent by registered mail or by certified mail to the claimant and to the employer at the last known address of each.

At the conclusion of the hearing, the regulations require the administrative law judge to make a compensation order with respect to the claim, in which order are contained appropriate findings of fact and conclusions of law. This is shown in 20 C.F.R. § 702.348, as follows:

§ 702.348 Formal hearings; preparation of final decision and order; content.

Within 20 days after the official termination of the hearing as defined by § 702.347, the administrative law judge shall have prepared a final decision and order, in the form of a compensation order, with respect to the claim, making an award to the claimant or rejecting the claim. The compensation order shall contain appropriate findings of fact and conclusions of law with respect thereto, and shall be concluded with one or more paragraphs containing the order of the administrative law judge, his signature, and the date of issuance.

After the hearing has been concluded and the order entered by the administrative law judge, he is required to deliver a transcript of the hearing and his signed compensation order to the deputy commissioner who shall file them in his office. The order becomes final 30 days after it is so filed, unless an interested party has filed an appeal to the Benefits Review Board, as stated below. The above proceedings are set forth in pertinent parts in 20 C.F.R. §§ 702.349 and 702.350, as follows:

§ 702.349 Formal hearings; filing and mailing of compensation orders; disposition of transcripts.

The administrative law judge shall, within 20 days after the official termination of the hearing, deliver by mail, or otherwise, to the office of the deputy commissioner having original jurisdiction, the transcript of the hearing, other documents or pleadings filed with him with respect to the claim, together with his signed compensation order. Upon receipt thereof, the deputy commissioner, being the official custodian of all records with respect to such claims within his jurisdiction, shall formally date and file the transcript, pleadings, and compensation order (original) in his office. Such filing shall be accomplished by the close of business on the next succeeding working day, and the deputy commissioner shall on the same day as the filing was accomplished, send by certified mail a copy of the compensation order to the parties and to representatives of the parties, if any.

§ 702.350 Finality of compensation orders.

Compensation orders shall become effective when filed in the office of the deputy commissioner, and unless proceedings for suspension or setting aside of such orders are instituted within 30 days of such filing, shall become final at the expiration of the 30th day after such filing, as provided in section 21 of the Act 33 U.S.C. § 921.

An appeal may be taken from an order of an administrative law judge to the Benefits Review Board by any interested party as provided in 20 C.F.R. § 702.391, as follows:

§ 702.391 Appeals; where.

Appeals may be taken to the Benefits Review Board, U.S. Department of Labor, Washington, D.C. 20210, by filing a notice of appeals with the office of the deputy commissioner for the compensation district in which the decision or order

appealed from was filed and by submitting to the Board a petition for review of such decision or order, in accordance with the provisions of Part 802 of this Title 20. The powers and duties of the Board are set forth in 33 U.S.C. § 921(b)(3) and (4), as follows:

(3) The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. *The Board's orders shall be based upon the hearing record.* The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in *the record considered as a whole.* The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.

(4) The Board may, on its own motion or at the request of the Secretary, remand a case to the administrative law judge for further appropriate action. The consent of the parties in interest shall not be a prerequisite to a remand by the Board.

(Emphasis supplied).

It is significant that the orders of the Board "shall be based upon the hearing record." It is clear that this provision assumes that a hearing was had on the claim by an administrative law judge and that a record was made of the hearing as required by the above quoted regulations and statute. Also, the record thus made must support the decision of the Board with substantial evidence.

An appeal from a decision of the Board may be made by any person adversely affected or aggrieved by a final order of the Board by filing a petition for review within 60 days in the United States Circuit Court of Appeals for the circuit in which the injury occurred, as provided in 33 U.S.C. § 921(c), as follows: [13]

Court of appeals; jurisdiction; persons entitled to review; petition; record; determination and enforcement; service of process; stay of payments

(c) Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

■ Applying the foregoing statutes and regulations to this case, we find that the procedure required to be followed was relatively simple. It may be stated in a few words. When Pearce filed his motion for a commutation of his compensation payments to a lump sum award with the deputy commissioner and at the same time asked for a hearing, it was the plain duty of the commissioner to transfer the case to the Chief Administrative Law Judge for a hearing in which findings of fact and conclusions of law would be made and a compensation

13. Originally, appeals were made to the district court for the district in which the injury occurred. 33 U.S.C. § 921(b), 44 Stat. 1424, 1436. Though Pearce was injured in Thailand and filed his claim in Hawaii, the OWCP transferred his claim without objection to the deputy commissioner in Chicago. No doubt, the Ninth Circuit decided that under the circumstances of Pearce's injury, and in view of the connection between the Defense Base Act and the Longshoremen's Act, the proper circuit for review was the Seventh where the office of the deputy commissioner is located whose order is involved in this case.

order entered by the administrative law judge. Such administrative law judge was required to deliver such findings, order and a transcript of the hearing to the deputy commissioner to be filed in his office. None of this was done. The deputy commissioner made the findings and conclusions and entered the order when he had no authority to do so, and in so doing he violated the statute and the regulations.[14]

■ Furthermore, the Board should have refused to hear the appeal and should have remanded it to the Chief Administrative Law Judge for further appropriate action as allowed by 33 U.S.C. § 921(b)(4) quoted above, because the Board only had authority to review a "hearing record" and there was no such record before it. In short, there was nothing for the Board to review, as it had no authority to consider or review the evidence that had been gathered by the deputy commissioner, or his order, nor to substitute its views for those required to have been, but were not, set forth in an opinion of an administrative law judge. See Presley v. Tinsley Maintenance Service, 529 F.2d 433, 436 (5 Cir. 1976). The Board has no authority to engage in a de novo proceeding or unrestricted review of a case brought before it. Its power of review is described in 20 C.F.R. § 802.301, as follows:

Subpart C—Procedure for Review
Action by the Board

§ 802.301  Scope of review

The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law

may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.

We agree for the most part with the dissent of the Board's Chairperson Washington in this case wherein she adopted the reasons stated in her dissenting opinion in Loiselle v. Portland Stevedoring Co., 2 BRBS 214 (Benefits Review Board, 1975), as follows:

* * * [T]he case should have been transferred to the Office of the Chief Administrative Law Judge for a formal hearing on the issues in dispute in accordance with the applicable Rules and Regulations promulgated pursuant to the Act. If appealed, subsequent review of the case by the Board would then be based solely on the record compiled by the administrative law judge after a hearing had been afforded the parties. This, I believe, is the procedure contemplated by the Act and its accompanying Rules and Regulations.

Therefore, I believe the Board is without authority to review the ruling of the deputy commissioner concerning the commutation of compensation and his alleged abuse of discretion until such time as a record pursuant to a formal hearing is developed. Hence, it is my opinion that this appeal should be dismissed. 2 BRBS at 220.

We do not agree with Chairperson Washington that the appeal should have been dismissed, as that would have left Pearce in limbo and would have finalized the deputy commissioner's order contrary to law. Section 921(b)(4) of the Statute, supra, vests in the Board all the authority necessary for it

---

14. The statute and the regulations do not describe with specificity the procedure to be followed if the deputy commissioner enters an order approving and granting the commutation when the application is first filed with him and no hearing is requested, or, on the other hand, if there is a hearing and the administrative law judge enters an order approving the commutation and there is no appeal. However, when the statute and the regulations are considered

as a whole, it can be concluded that in either of these events the deputy commissioner would send his order, or the order of the administrative law judge, as the case may be, to the Director of the OWCP for approval. If the director approves the order, the deputy commissioner would then issue a final order commuting the compensation payments to a lump sum award.

on its own motion to send the case to an administrative law judge for a hearing. Consequently, there was no need for a dismissal by the Board.

The argument of the respondent that the original application for compensation was *adjudicatory* in nature and that the application for commutation to a lump sum award was *administrative* in character and could be disposed of by the deputy commissioner in his discretion without complying with the above cited statute and regulations, is unpersuasive. The statute and the regulations make no such distinction. They apply equally to all claims and applications for workmen's compensation benefits which are disputed or controverted. The very fact that the Board considered the appeal in this case refutes and belies respondents' administrative and discretion arguments. In other words, some of the provisions of the statute and regulations were followed by the appeal to the Board, and by its action thereon, but the others with respect to a hearing by an administrative law judge and related proceedings were ignored and violated. If respondents' arguments that the deputy commissioner had the unbridled and absolute discretionary power to finally dispose of the commutation application were followed, his decision should have ended the matter, but, of course, it did not.

█ Also, we are not impressed with the contention of the respondent that the substantial evidence rule is not applicable to a hearing on an application for commutation. The statute quoted above (33 U.S.C. § 921(b)(3)) specifically provides that "The findings of fact in the decision under review by the Board shall be conclusive *if supported by substantial evidence in the record considered as a whole.*" (Emphasis supplied). Section 802.301 of the regulations, *supra*, likewise so provides. Furthermore, it is well settled that the substantial evidence test is generally applied in considering appeals of administrative agency decisions that are subject to review, especially those made in proceedings under the Administrative Procedure Act, 5 U.S.C. § 554, which governs the hearing that should have been held in the instant case.[15]

█ It is well settled that reasonable regulations promulgated pursuant to statutory authority have the force and effect of law. The regulations in this case meet these requirements. Also, an agency is bound by its own regulations. *See Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 768, 3 L.Ed.2d 1012 (1959), and *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Jones v. United States*, 203 Ct.Cl. 544 (1974); *Cason v. United States*, 200 Ct.Cl. 424, 471 F.2d 1225 (1973); *Fletcher v. United States*, 183 Ct.Cl. 1, 392 F.2d 266 (1968); *Conn v. United States*, 180 Ct.Cl. 120, 376 F.2d 878 (1967); *Cole v. United States*, 171 Ct.Cl. 178 (1965); *Middleton v. United States*, 170 Ct.Cl. 36 (1965); *Smith v. United States*, 155 Ct.Cl. 682 (1961); *Daub v. United States*, 154 Ct.Cl. 434, 292 F.2d 895 (1961); and *Watson v. United States*, 142 Ct.Cl. 749, 162 F.Supp. 755 (1958).

In *Whelan v. United States*, 208 Ct.Cl. 688, 529 F.2d 1000 (1976), the United States Court of Claims said:

When a Government official or agency lawfully prescribes rules and procedures, these are binding on the Government as well as on its citizens. *Yellin v. United States*, 374 U.S. 109 [83 S.Ct. 1828, 10 L.Ed.2d 778] (1963); *Accardi v. Shaughnessy*, 347 U.S. 260 [74 S.Ct. 499, 98 L.Ed. 681] (1954); *Chapman v. Sheridan-Wyoming Coal Co.*, 338 U.S. 621 [70 S.Ct. 392, 94 L.Ed. 393] (1950); *Bridges v. Wixon*, 326 U.S. 135, 153 [65 S.Ct. 1443, 89 L.Ed. 2103] (1945); *Bilokumsky v. Tod*, 263 U.S. 149, 155 [44 S.Ct. 54, 68 L.Ed. 221] (1923).

In *Morton v. Ruiz*, 415 U.S. 199 [94 S.Ct. 1055, 39 L.Ed.2d 270] (1974), the Court stated at p. 235:

Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. * * *

Apparently the instant case is one of first impression, and for that reason we have quoted extensively from the regulations and statutes.

---

15. We have found no case, and none has been cited to us, where the procedure followed by the agency in this case has been approved.

And in *United States v. Nixon*, 418 U.S. 683 [94 S.Ct. 3090, 41 L.Ed.2d 1039] (1974), the Court stated at p. 696 [94 S.Ct. at p. 3101]:

> * * * So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and enforce it. * * *

208 Ct.Cl. at 694–695, 529 F.2d at 1003.

We hold that the deputy commissioner and the Board violated the agency's regulations, as well as the statute, and that the Board's decision must be reversed.

Accordingly, the decision of the Board is reversed and set aside and the case is remanded to the Board with instructions to send the case to the Chief Administrative Law Judge for a hearing as required by the cited regulations and statutory provisions, in accordance with this opinion.[16]

Reversed And Remanded with instructions.

---

**16.** Pearce may find it to his advantage to file a new application for commutation rather than to further litigate his present one, as such procedure could be faster, especially if the deputy commissioner should grant it with the approval of the Director of the OWCP and there should be no hearing requested nor an appeal by an interested party. Section 922 of the Act allows modification on certain conditions, as follows:

> § 922. Modification of awards
>
> Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensa-

tion, or award compensation. 33 U.S.C. § 922.

The respondent acknowledges in his brief that Pearce can file a new application for commutation, or as many as he cares to file, even while this case is pending. Such brief also states:

> Furthermore, counsel for the Director has obtained the commitment of the Deputy Commissioner for the Tenth Compensation District, headquartered in Chicago, Illinois, who has jurisdiction over this claim, to expedite procedures on any new application by Pearce.

Pearce could no doubt show a change in conditions with respect to interest rates now being paid on guaranteed certificates of deposits by banks and savings and loan associations, which rates have recently been much higher than the 6 and 7 percent being paid when the present application was filed. Also, there may be other changes in conditions of which we have no knowledge.

